**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Josephine L. BROUGHTON–JONES, a/k/a
Josie Broughton, Defendant–
Appellant.**

No. 94–5539.

United States Court of Appeals,
Fourth Circuit.

Argued: Nov. 3, 1995.

Decided: Dec. 22, 1995.

**ARGUED:** Benjamin Cecil Duster, Chicago, IL, for Appellant. Terry L. Wooten, Assistant United States Attorney, Columbia, SC, for Appellee. **ON BRIEF:** Thomas D. Broadwater, Sr., Columbia, SC, for Appellant. J. Preston Strom, Jr., United States Attorney, Columbia, SC, for Appellee.

Before MICHAEL and MOTZ, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

Vacated and remanded by published opinion. Senior Judge PHILLIPS wrote the opinion, in which Judge MICHAEL and Judge DIANA GRIBBON MOTZ joined.

## OPINION

PHILLIPS, Senior Circuit Judge:

In this case we must first determine whether a defendant's valid waiver of her right to appeal her sentence bars her from contesting the district court's restitution or-

der on the grounds that it is not authorized by the Victim and Witness Protection Act (VWPA). Because we conclude that an appeal waiver does not bar such a challenge, we must further decide whether a defendant who pleads guilty only to perjury may be required under the VWPA to make restitution to a victim of a financing scheme for which she was indicted but not convicted. We conclude that the VWPA does not authorize such an order in this case; therefore, we vacate the order and remand for resentencing.

## I.

Defendant Josephine L. Broughton–Jones operated Telesys Limited International—a financial service company in Columbia, South Carolina—the stated purpose of which was to help individuals obtain business financing through non-standard channels. As payment for her efforts to secure financing, Broughton–Jones would receive a hefty brokerage fee from her clients.

The transaction giving rise to this case began in 1992, when Ralph Erana, a businessman from Vancouver, contacted Broughton–Jones in an attempt to obtain $10 million in financing. Broughton–Jones agreed to help Erana, and she received $25,000 from him as advance payment for her services. In connection with the Erana transaction, Broughton–Jones contacted Thomas Gallman who, unbeknownst to her, was then cooperating with the FBI. With Gallman's help, the FBI set up an undercover operation in the course of which Broughton–Jones was videotaped while she assisted in the preparation of bogus sight drafts. The sight drafts were signed in the fictitious name of "Otto Solheim." Broughton–Jones faxed these documents to Erana, apparently to make him believe that approval of his promised financing was imminent. Later, Broughton–Jones told Erana that Solheim's organization had refused to go through with the deal; she never returned the $25,000 to Erana.

In March of 1993, Broughton–Jones testified before a federal grand jury that was investigating her business dealings. While she was under oath, the following exchange relevant to this appeal took place:

Q. Have you ever seen anybody sign the name Otto Solheim?

A. Never have.

Q. Who created the sight draft, that is Exhibit # 2, do you know?

A. I have no idea.

(JA 20) The grand jury indicted Broughton–Jones on four counts of perjury based on her grand jury testimony and one count of wire fraud in connection with the Erana transaction.

After lengthy negotiations between her lawyer and the Government, Broughton–Jones pleaded guilty to one count of perjury, that based upon the testimony just quoted. The Government dismissed all other charges in exchange for her plea. After a Rule 11 hearing, the district court accepted Broughton–Jones's plea to the single perjury charge and sentenced her to six months in jail, two years supervised release, and 150 hours of community service. The court further ordered her to make restitution of $25,000 to Erana. Broughton–Jones then filed a motion to reduce her sentence, which the district court dismissed without a hearing. She now appeals her sentence, challenging both the length of her incarceration and the propriety of the restitution order.

## II.

■ Broughton–Jones first contends that, although her sentence was within the range specified by the Sentencing Guidelines, the district court should have departed downward rather than sentencing her to six months imprisonment. We do not have jurisdiction to consider that contention. Under *United States v. Bayerle*, 898 F.2d 28, 30–31 (4th Cir.1990), a district court's decision not to depart downward is not appealable, unless that decision was based on the trial judge's mistaken belief that he was legally forbidden to depart downward. Nothing in the record suggests that the district court believed it was forbidden to depart downward in this case; therefore, its decision not to depart downward is not appealable. *Id.* at 31.

## III.

Broughton–Jones's principal contention is that the district court's restitution order was not authorized by the Victim and Witness Protection Act (VWPA), 18 U.S.C. §§ 3663–64 (1995 Supp). As an initial matter we must determine whether, as the Government contends, Broughton–Jones waived her right to contest the validity of the restitution order by signing a plea agreement that contained an appeal-waiver provision. The plea agreement includes the following clause:

The Defendant, JOSEPHINE L. BROUGHTON–JONES, realizing the uncertainty of estimating the sentence she will ultimately receive, and fully understanding that she has a right of direct appeal of the sentence pursuant to 18 U.S.C. § 3742(a) and the grounds listed therein, knowingly, voluntarily and expressly waives the right to appeal her sentence on those grounds.

(JA 11) To determine whether this waiver clause bars Broughton–Jones from appealing the district court's restitution order, we must decide whether the appeal waiver was valid, and if so, whether her challenge to the restitution order is within the scope of that waiver. *See United States v. Attar,* 38 F.3d 727, 731–33 (4th Cir.1994). We conclude that, although the waiver was valid, the grounds on which Broughton–Jones contests the restitution order are outside the scope of that waiver.

### A.

■ First, the waiver was valid. A defendant may waive her right to appeal, if that waiver is "the result of a knowing and intelligent decision to forgo the right to appeal." *Id.* at 731 (quoting *United States v. Wessells,* 936 F.2d 165, 167 (4th Cir.1991); *see also, e.g., United States v. Marin,* 961 F.2d 493, 496 (4th Cir.1992); *United States v. Davis,* 954 F.2d 182, 186 (4th Cir.1992); *United States v. Wiggins,* 905 F.2d 51, 53 (4th Cir. 1990). In determining whether a defendant's waiver is "knowing and intelligent," we must examine "the particular facts and circumstances surrounding [the] case, including the background, experience and conduct of the accused." *Davis,* 954 F.2d at 186 (quoting

*Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)).

The record indicates that Broughton–Jones's waiver was knowing and intelligent. At the Rule 11 hearing, the trial judge established that the defendant was educated, was represented by counsel, and had discussed with her lawyer the nature of the charge to which she was pleading. (JA 22, 24, 27) Broughton–Jones indicated during the Rule 11 colloquy that she and her lawyer had discussed the Sentencing Guidelines and that she understood the maximum penalties to which she could be subject. (JA 28–29) When the court specifically questioned her regarding the voluntariness of her plea, she indicated that no one had forced her to enter the agreement. (JA 32)

Also at the hearing the court asked the Government to summarize the plea agreement. In so doing, the Government specifically outlined the appeal waiver paragraph, further noting that the waiver had been included as a result of extensive plea negotiations with the defense. (JA 34–35) At the end of the Government's summary, the court asked Broughton–Jones and her counsel separately if the Government had correctly described the agreement; both stated, without qualification, "That is the agreement." (JA 35) Although the district court did not question Broughton–Jones specifically about the waiver provision itself, its failure to do so, standing alone, does not invalidate the waiver. *Davis,* 954 F.2d at 186. Viewing all the circumstances under which Broughton–Jones entered her plea, we conclude that her plea waiver was knowing and intelligent, and was therefore valid.

### B.

■ Having concluded that the defendant's waiver of her right to appeal her sentence was valid, we now must decide whether her challenge to the district court's sentence—that it was not authorized by the VWPA—falls within the scope of her appeal waiver. We conclude that it does not.

■ In *United States v. Marin,* we recognized that even valid appeal waivers will not bar appellate review of every sentence:

[A] defendant who waives his right to appeal does not subject himself to being sentenced entirely at the whim of the district court. For example, a defendant could not be said to have waived his right to appellate review of a sentence *imposed in excess of the maximum penalty provided by statute* or based on a constitutionally impermissible factor such as race.

961 F.2d 493, 496 (4th Cir.1992) (emphasis added); *see also Attar,* 38 F.3d at 732–33 (valid appeal waiver does not bar review of 6th Amendment challenge to plea proceedings).

■ Here, Broughton–Jones contends that the district court's restitution order exceeded its authority under the VWPA. More specifically, she points out that 18 U.S.C. § 3663(a)(1) authorizes a district court to order restitution only for losses traceable to a defendant's offense of conviction. *See also Hughey v. United States,* 495 U.S. 411, 110 S.Ct. 1979, 109 L.Ed.2d 408 (1990) (interpreting predecessor to § 3663(a)(1)). Because Broughton–Jones pleaded guilty only to perjury—a crime that caused no direct pecuniary harm to Erana—she contends that the district court exceeded its statutory authority by ordering her to pay restitution to Erana, an apparent victim only of the financing scheme for which Broughton–Jones was indicted but not convicted.[1]

In considering this contention, *Marin*'s language making waivers inapplicable to appeals that challenge sentences as "imposed in excess of the maximum penalty provided by statute" is instructive. Appeals challenging sentences of imprisonment that exceed the statutory maximum surely are such. Because a restitution order imposed when it is not authorized by the VWPA is no less "illegal" than a sentence of imprisonment that exceeds the statutory maximum, appeals challenging the legality of restitution orders are similarly outside the scope of a defendant's otherwise valid appeal waiver.

We therefore turn to the question whether the restitution order properly challenged by this appeal was an illegal one that must be vacated.

### IV.

Before 1990, the VWPA authorized restitution only "to any victim of the offense" for which a defendant was convicted. *See* 18 U.S.C. § 3579(a)(1) (1985) (codified as amended at 18 U.S.C. § 3663(a)(1) (1995 Supp.)). In *Hughey,* the Supreme Court interpreted this requirement narrowly; it held that where a defendant is charged with multiple crimes, but is convicted of only one of those offenses, the sentencing court may order restitution to any victim "only for the loss caused by the specific conduct that is the basis of the offense of conviction." 495 U.S. at 413, 110 S.Ct. at 1981.

■ In 1990, Congress responded to *Hughey* by amending the VWPA. *See* Crime Control Act of 1990, Pub.L. No. 101–647, § 2509, 104 Stat. 4789, 4863 [hereinafter 1990 Amendments]. The 1990 Amendments made two significant changes: 1) With respect to offenses involving a scheme, conspiracy, or pattern of criminal activity, they broadened the class of "victims" to include any person directly harmed by the defendant's criminal conduct, 18 U.S.C. § 3663(a)(2); and 2) They allowed courts to order restitution "to the extent agreed to by the parties in a plea agreement," 18 U.S.C. § 3663(a)(3). After *Hughey* and the 1990 Amendments, therefore, we analyze a district court's authority to order restitution in two stages. First, we determine whether the parties agreed to an amount of restitution in a plea agreement; such agreements may authorize restitution in an amount greater than the loss attributable to the offense of conviction. *E.g., United States v. Schrimsher,* 58 F.3d 608, 610 (11th Cir.1995); *United States v. Silkowski,* 32 F.3d 682 (2d Cir.1994); *United States v. Arnold,* 947 F.2d 1236, 1238 (5th Cir.1991); *cf. United States v. Patty,* 992 F.2d 1045, 1050–

---

1. Congress partially superseded the holding in *Hughey* when it amended the VWPA in 1990. *See* Crime Control Act of 1990, Pub.L. No. 101–647, § 2509, 104 Stat. 4789, 4863. We earlier recognized that, although the 1990 Amendments narrowed *Hughey* 's holding, *Hughey* still applies

where, as here, a restitution award "clearly encompasses an offense for which the defendant was not convicted." *United States v. Bailey,* 975 F.2d 1028, 1033 n. 1 (4th Cir.1992). Accordingly, we continue to apply *Hughey* as limited by the 1990 Amendments.

51 (10th Cir.1993) (although defendant may be ordered to pay up to sum specified in plea agreement, Government still must prove that loss to be repaid resulted from defendant's criminal conduct). If the plea agreement does not provide for a larger amount, the court still may order restitution to any "victim" to the extent of the loss caused by an offense of conviction. *E.g., Silkowski*, 32 F.3d at 689.

■ Accordingly, we first turn to Broughton–Jones's plea agreement to determine whether she agreed to make restitution in an amount greater than the loss caused by her offense of conviction—perjury. We conclude that she did not. Although it does discuss sentencing matters generally, the plea agreement never specifically mentions restitution.[2] Neither did the Government address restitution when it summarized the plea agreement at the Rule 11 hearing. Finally, the plea agreement itself contains an integration clause, which indicates that it sets forth the entire agreement between the Government and Broughton–Jones. Thus, it appears the parties never reached an agreement regarding restitution in the course of their plea negotiations. As a result, § 3663(a)(3), which authorizes restitution orders to the extent agreed to by the parties in a plea agreement, provides no basis for the district court's restitution order. *See United States v. Stout*, 32 F.3d 901, 904–05 (5th Cir.1994) (where defendant never promises in plea agreement to pay particular amount of restitution, § 3663(a)(3) does not authorize restitution); *Gall v. United States*, 21 F.3d 107, 111 (6th Cir.1994) (same).

■ This result is not changed by Broughton–Jones's acknowledgement during the Rule 11 colloquy that, if the court accepted her guilty plea, she realized that she could be required to make restitution to her victims. (JA 26) The bounds of a court's power to order restitution under § 3663(a)(3) are set by the plea agreement itself. We recognize that, in cases where the plea agreement provides for restitution in an uncertain amount, some courts have thought it proper to examine the transcripts of the Rule 11 and sentencing hearings to determine whether the parties actually did in that later stage agree to a specific sum. *See Schrimsher*, 58 F.3d 608, 610; *Silkowski*, 32 F.3d at 689; *United States v. Lavin*, 27 F.3d 40, 42 (2d Cir.1994). But those cases are not applicable here, where the plea agreement makes no provision for restitution at all. Accordingly, Broughton–Jones's acknowledgment at the Rule 11 colloquy that she might be ordered to pay restitution does not independently invoke the district court's power to order restitution under 18 U.S.C. § 3663(a)(3).

■ Therefore, the district court's restitution order was proper only if it compensated a victim of Broughton–Jones's perjury for some loss caused by that offense. *See* 18 U.S.C. § 3663(a)(1); *Hughey*, 495 U.S. at 413, 110 S.Ct. at 1981. *Hughey* makes clear that in determining what loss flowed from the offense of conviction, we must examine the "specific conduct" supporting Broughton–Jones's conviction. *Id.* Under 18 U.S.C. § 1623(a), Broughton–Jones's perjury was complete when she knowingly made a "false material declaration" before the grand jury. The Government has identified no loss that flowed to anyone—much less specifically to Erana—as a result of this perjury before the grand jury.[3] Accordingly, we conclude that

---

**2.** Paragraph 7 of the plea agreement provides as follows:

> The Defendant, JOSEPHINE L. BROUGHTON–JONES, understands that the matter of sentencing is within the sole discretion of the Court, and that the sentence applicable to her case will be imposed in conformity with the United States Sentencing Commission Guidelines, Application Notes and Policy Statements. The Defendant also understands that her sentence has not yet been determined by the Court, and that any estimate of a probable sentencing range she may have received from her attorney, the Attorneys for the Government, or the United States Probation Office is only a prediction, not a promise, and is not binding on the Attorneys for the Government, the Probation Office or the Court.

(JA 11)

**3.** Though we have been advised of no decision imposing or affirming restitution for loss to a victim of perjury, we may assume that such a loss is conceivable (*e.g.*, by delaying Government efforts to recover stolen or defrauded money), but no factual basis for any such claim is present here.

the district court's restitution order is not authorized by 18 U.S.C. § 3663(a)(1).

The Government attempts to avoid this conclusion by arguing that because the transaction about which Broughton–Jones lied was the very one in which she allegedly defrauded Erana, her fraud was "inextricably intertwined" with her offense of conviction. Although there is a factual connection between Broughton–Jones's perjury and her alleged financing scheme, that connection is legally irrelevant. We conclude that *Hughey* and the text of the VWPA do not allow us to stretch the "offense" involved in a perjury conviction to include any other conduct, whether or not the subject of separate conviction, to which the defendant's perjurious statement may have borne some relationship.

Nor does the broader definition of "victim" added by the 1990 Amendments change this result. Section 3663(a)(2) expands the definition of "victim" in certain cases:

> For the purposes of restitution, a victim of an offense *that involves as an element a scheme, a conspiracy, or a pattern of criminal activity* means any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern.

18 U.S.C. § 3663(a)(2) (emphasis added). Because the elements of perjury do not include a scheme, conspiracy, or pattern of criminal conduct, this new definition does not expand the class of victims of Broughton–Jones's perjury beyond those originally included under § 3663(a)(1). In summary, because Broughton–Jones's perjury did not cause the $25,000 loss to Erana compensated by the district court's restitution order, § 3663(a)(1) does not authorize that order.

■ One final point requires consideration, however. As the Government points out, the defendant's counsel did informally agree to the restitution order at the sentencing hearing. When the trial judge questioned him regarding the propriety of the restitution order, the defendant's attorney responded: "[I]f you would order restitution, if she wins the Georgia Lottery, that will be fine." (JA 59) This informal consent is something different from a mere failure to object, which would neither authorize restitution nor interfere with our ability to review the defendant's appeal. *See United States v. Mortimer,* 52 F.3d 429, 436 (2d Cir.1995) (failure to object did not bar appellate review of restitution order); *United States v. Baker,* 25 F.3d 1452, 1456 (9th Cir.1994) (same). But it is something less than a formal concession in a plea agreement, which 18 U.S.C. § 3663(a)(3) does make a proper basis for restitution orders.

■ What this statement amounts to, then, is an informal agreement by a defendant that a certain—otherwise unauthorized—order would be proper in his case. Because a court's power to order restitution is statutory in origin, a defendant's consent to a particular restitution order cannot, without more, authorize a restitution order not authorized by the statutory source. *Cf. United States v. DeSalvo,* 41 F.3d 505 (9th Cir.1994) ("Federal courts do not have inherent power to order restitution. The power to order restitution must therefore stem from some statutory source ....") (citations omitted). The 1990 Amendments to the VWPA provide the only formal way for the statutory limits to be varied: by specific agreements of the parties formally embodied in plea agreements. *See* 18 U.S.C. § 3663(a)(3). To allow parties to vary the statutory limits by consenting outside a plea agreement would be to read into the VWPA a further amendment that Congress did not make. Accordingly, we conclude that the defendant's informal agreement to the restitution order at sentencing does not authorize the district court's otherwise unauthorized order.

## V.

Because the restitution order was an illegal one, we must vacate the entire sentence of which it was a part and remand for resentencing in light of this opinion.[4]

*SO ORDERED*

---

**4.** Our mandate for resentencing is without any further limitation than that the sentence imposed

may not, on the present record, include any order of restitution. Otherwise, resentencing may proceed de novo, constrained only by the constitutional bar against vindictiveness, *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), the controlling statutes, and the Sentencing Guidelines. *See United States v. Bell*, 5 F.3d 64, 67 (4th Cir.1993) (unless specifically limited by court of appeals' mandate, resentencing on remand is de novo).