UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                            No. 00-4433

DANIEL QUACKENBUSH,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
Terrence W. Boyle, Chief District Judge.
(CR-99-129)

Argued: April 6, 2001

Decided: May 29, 2001

Before WILLIAMS, TRAXLER, and KING, Circuit Judges.

_____

Reversed and remanded by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Mark Everette Edwards, Durham, North Carolina, for
Appellant. David J. Cortes, Assistant United States Attorney, Raleigh,
North Carolina, for Appellee. **ON BRIEF:** Janice McKenzie Cole,
United States Attorney, Anne M. Hayes, Assistant United States
Attorney, Raleigh, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

## OPINION

PER CURIAM:

Daniel Quackenbush was convicted after a jury trial in the United States District Court for the Eastern District of North Carolina as an accessory-after-the-fact to a bank robbery after he assisted three bank robbers, post-robbery, by driving them to and from various locations, harboring them, and helping them travel and spend the proceeds of the robbery. Quackenbush was sentenced to sixty-three months imprisonment, and he was held jointly and severally liable for restitution in the amount of $26,343.99 based upon the losses to the bank, a pre-robbery carjacking victim, and the carjacking victim's insurers. Quackenbush argues on appeal that the district court committed plain error in assessing the full amount of restitution against him because the basis for his conviction was only as an accessory-after-the-fact to the robbery. We agree with the district court that Quackenbush can be held jointly and severally liable for the full amount of the bank's unrecovered losses, but we disagree with the portion of the district court's order finding Quackenbush liable for restitution to the owner of the car-jacked vehicle and the vehicle's insurer. We remand for the district court to key the manner and schedule of payment to Quackenbush's financial situation.

I.

Lorenzo Nesbitt, Robert Bishop, and Duana David Darby went to a mall and stole a car at gunpoint. They then went to a First Union Bank and robbed it. After the robbery, Nesbitt drove to a friend's house, called Quackenbush, and asked Quackenbush to come and pick him up for a ride. Quackenbush initially declined but agreed after Nesbitt offered to pay for the ride. Quackenbush met the three robbers and drove them to Quackenbush's home. At Quackenbush's house, the robbers dumped the money on a coffee table and everyone, including Quackenbush and his girlfriend, assisted in counting it. The

2

amount totaled approximately $23,000. Each of the robbers then gave Quackenbush money for driving them.

Quackenbush later drove Darby home so that Darby could take his share of the money and go to New York. Quackenbush took the other two bank robbers to the mall, and, afterwards, they returned to Quackenbush's house and partied. Using disposable cameras that they had purchased at the mall, they took pictures of the guns that they used in the robbery.

The next day, Quackenbush and his girlfriend drove Bishop and Nesbitt to the Charlotte airport to catch a flight to El Paso. Nesbitt paid Quackenbush for the ride and also gave him money to stay at a hotel. One week later, Quackenbush picked up Nesbitt and Bishop after they returned from El Paso.

Quackenbush and Bishop were charged on a seven-count indictment. Count Six charged that, knowing that carjacking and bank robbery offenses had been committed, Quackenbush received, comforted, and assisted the offenders in order to hinder and prevent their apprehension, trial, and punishment, in violation of 18 U.S.C.A. § 3. Count Seven charged him with receiving, possessing, concealing, and storing in excess of $1000 in U.S. currency stolen from a bank in violation of 18 U.S.C.A. § 2113(b) and (c). Trial began on February 10, 2000, and the jury convicted Quackenbush on Count Six and on a lesser-included misdemeanor charge as to Count Seven.[1] On May 17, 2000, the district court sentenced Quackenbush to sixty-three months imprisonment on Count Six and a concurrent twelve month sentence on Count Seven. The district court concluded that Quackenbush was jointly and severally liable for restitution and ordered him to pay a total of $26,343.99. This amount was based upon losses by the bank ($22,681.53), the carjacking victim ($952.86), and the carjacking victim's insurers ($849.89 and $1,859.71). Quackenbush did not object to the amount of restitution.

_____

[1] Quackenbush was convicted of possessing $1,000 or less of stolen bank accounts, as opposed to possessing more than $1,000.

3

## II.

The sole issue on appeal is whether the district court erred in imposing restitution against Quackenbush in the full amount of the bank's losses where the basis for Quackenbush's conviction was his conduct as an accessory-after-the-fact.[2] Quackenbush argues that although 18 U.S.C.A. § 3663A (West 2000), mandates restitution for victims proximately harmed by the defendants' criminal conduct, the bank was not so harmed, at least not in the full amount, by Quackenbush's conduct because he was merely an accessory-after-the-fact. In other words, Quackenbush argues that it was improper to impose the full amount of restitution against him where the bank's losses were not caused by the specific conduct that was the basis of his convictions and where the losses were complete by the time he engaged in his criminal conduct.[3] Because Quackenbush did not object below, we review the restitution order for plain error. See United States v. Ubakanma, 215 F.3d 421, 427 (4th Cir. 2000). "Four conditions must be met to correct plain error: there must be (1) an error, such as a deviation from a legal rule; (2) the error must be plain; (3) it must affect substantial rights; and (4) it must seriously affect the fairness, integrity, or public reputation of judicial proceedings." Id. at 429.

18 U.S.C.A. § 3663A, which codifies the pertinent provision of the Mandatory Victim Restitution Act (MVRA) of 1996 and which governs "Mandatory Restitution to Victims of Certain Crimes," provides, in pertinent part:

> (a)(1) Notwithstanding any other provision of law, when

_____

[2] The Government concedes on appeal that "[w]ith respect to restitution to the carjacking victim and her insurers, the restitution order was plainly erroneous, because the losses to those victims were not linked to Quackenbush's offenses." (Appellee's Br. at 10.) We agree. We therefore focus our analysis solely upon the restitution order as it relates to the bank's unrecovered losses.

[3] Quackenbush concedes that "[r]egarding the offense of possession of stolen bank funds, based [on] the jury's verdict, the district court could impose restitution for that conviction, but in an amount no greater than $1000.00 since the jury convicted Mr. Quackenbush of accepting no more than $1000.00." (Appellant's Br. at 9.)

4

sentencing a defendant convicted of an offense described in subsection (c), <u>the court shall order</u>, in addition to, or in the case of a misdemeanor, in addition to or in lieu of, any other penalty authorized by law, <u>that the defendant make restitution to the victim of the offense</u> or, if the victim is deceased, to the victim's estate.

   (2) For the purposes of this section, <u>the term "victim" means a person directly and proximately harmed as a result of the commission of an offense</u> for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern. . . .

18 U.S.C.A. § 3663A (emphasis added). Interpreting the predecessor statute to the MVRA, the Victim and Witness Protection Act of 1982 (VWPA), the Supreme Court has stated that restitution is authorized "only for the loss caused by the specific conduct that is the basis of the offense of conviction." <u>Hughey v. United States</u>, 495 U.S. 411, 413 (1990). In 1990, following the <u>Hughey</u> decision, the VWPA was amended to provide that if the offense involves "as an element" a scheme, conspiracy, or pattern of criminal activity, the definition of "victim" includes any person directly harmed by the defendant's criminal conduct. <u>United States v. Broughton-Jones</u>, 71 F.3d 1143, 1149 (4th Cir. 1995). "Although this amendment superseded <u>Hughey</u>'s holding in part, we have recognized that <u>Hughey</u> still applies when, in the absence of an appropriate plea agreement that provides for restitution,[4] a restitution award clearly encompasses an offense for which the defendant was not convicted." <u>United States v. Blake</u>, 81 F.3d 498, 506 n.6 (4th Cir. 1996) (internal quotation marks omitted). Thus, for a person to be considered a victim under the restitution statute, the act that harms the individual must either be conduct underlying an element of the offense of conviction, or an act taken in furtherance of a scheme, conspiracy, or pattern of criminal activity that is specifically included as an element of the offense of conviction. <u>Cf.</u> <u>Broughton-Jones</u>, 71 F.3d at 1149. If the harm to the person does not

_____

[4] There is no plea agreement in this case.

5

result from conduct underlying an element of the offense of conviction, or conduct that is part of a pattern of criminal activity that is an element of the offense of conviction,[5] the district court may not order the defendant to pay restitution to the harmed individual. Cf. id. In 1996, Congress enacted the MVRA, which made restitution mandatory, as opposed to discretionary, irrespective of the defendants' ability to pay. See 18 U.S.C.A. § 3664(f)(1)(A) (providing that "the court shall order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant")."The burden of demonstrating the amount of the loss sustained by a victim as a result of the offense shall be on the attorney for the Government." 18 U.S.C.A.

_____

[5] The Government does not argue that restitution is appropriate on the basis that Quackenbush's conduct was taken in furtherance of a scheme, conspiracy, or pattern of criminal activity that is specifically included as an element of the offense of conviction. Cf. United States v. Neal, 36 F.3d 1190, 1200-01 (1st Cir. 1994) (stating that the broadening of the definition of "victim" to include offenses that involve a scheme, conspiracy, or a pattern of criminal activity "appears to apply to cases involving mail fraud, racketeering, or other federal crimes that require proof of a scheme, conspiracy, or pattern of criminal conduct" and that it "does not appear to support [a] restitutionary award" based upon money laundering or being an accessory-after-the-fact because "[n]either of these offenses involves proof of a scheme, conspiracy or pattern of criminal activity as an element"). In United States v. Plumley, 993 F.2d 1140 (4th Cir. 1993), we upheld a restitution order against Plumley, who conspired with her boyfriend to rob a bank, gave him two pistols, drove the boyfriend to the bank, waited in the car while the boyfriend robbed the bank, and drove the two of them away from the robbery. See id. at 1141. Although Plumley argued that her actions did not directly harm the bank because she did not rob the bank, we upheld the restitution order because, among other reasons, "as a member of the conspiracy, Plumley was liable for all of the actions of her co-conspirators in furtherance of the conspiracy . . . [s]tated differently, Plumley's conduct during the course of the conspiracy unquestionably caused direct harm to [the bank]." Id. at 1142. Here, Quackenbush did not participate in the planning or execution of the robbery, nor is he alleged to have conspired to do so. Thus, the only question in the present case is whether the bank's losses resulted from Quackenbush's conduct as an accessory-after-the-fact and not as part of a conspiracy or scheme.

6

§ 3664(e). The defendant, however, has the burden of demonstrating his financial resources. Id.

A.

The Government argues that there is no per se rule against ordering restitution against accessories-after-the-fact and that several facts support the causal link between Quackenbush's post-robbery conduct and the bank's losses:

> Quackenbush drove the robbers to his home knowing they had just committed an armed bank robbery. He then drove Darby home so that he could escape to New York -- with the bank's money. He sheltered the robbers and the bank's funds for the night. He helped the robbers escape the next day, with at least part of the stolen funds, by driving them from Fayetteville to Charlotte. He retrieved them from the Charlotte Airport a week later and harbored them for some time afterward. In sum, Quackenbush assisted and facilitated the robbers' possession of the loot and prevented its recovery, which is to say, he assisted and facilitated the bank's loss.

(Appellee's Br. at 14-15 (internal citations omitted)).

We agree that there is no per se rule against imposing restitution on persons based upon their convictions for being accessories-after-the-fact. See United States v. Neal, 36 F.3d 1190, 1201 n.10 (1st Cir. 1994) (recognizing that sentencing court "could well be within its statutory authority" under the VWPA to impose the full amount of losses in restitution if "Neal played a significant role in helping the other defendants escape and that but for his actions, there was a substantial likelihood that the full proceeds would have been recovered"). Rather, the relevant question is whether the victims' losses were proximately caused by the specific conduct for which Quackenbush was convicted, i.e., being an accessory-after-the-fact by virtue of his acts of driving the bank robbers to and from various locations following the bank robbery, harboring them, helping them count and spend the money, and helping them hide from the police.

7

Our decision in <u>United States v. Broughton-Jones</u>, 71 F.3d 1143 (4th Cir. 1995), is instructive. <u>Broughton-Jones</u> involved a financial consultant who was indicted on charges of wire fraud and perjury and who pleaded guilty (and was convicted) only of perjury arising from her testimony before the grand jury that she never signed a document under the fictitious name of "Otto Solheim." <u>Id.</u> at 1145. In analyzing the question of whether the district court's restitution order properly "compensated [the] victim of [the] perjury for some loss caused by that offense," we stated that "<u>Hughey</u> makes clear that in determining what loss flowed from the offense of conviction, we must examine the `specific conduct' supporting [the] conviction." <u>Id.</u> at 1148 (quoting <u>Hughey</u>, 495 U.S. at 413). We stated that "Broughton-Jones's perjury was complete when she knowingly made a `false material declaration' before the grand jury. The Government has identified no loss that flowed to anyone -- much less specifically to [the victim] -- as a result of this perjury before the grand jury." <u>Id.</u> We also rejected the notion that because "the transaction about which Broughton-Jones lied was the very one in which she allegedly defrauded [the victim], her fraud was `inextricably intertwined' with her offense of conviction," stating that "[a]lthough there is a factual connection between Broughton-Jones's perjury and her alleged financing scheme, that connection is legally irrelevant" because "<u>Hughey</u> and the text of the VWPA do not allow us to stretch the `offense' involved in the perjury conviction to include any other conduct, whether or not the subject of separate conviction, to which the defendant's perjurious statement may have borne some relationship." <u>Id.</u> at 1149. We nevertheless left open the possibility that a court could impose restitution for perjury in some instances, as we assumed that "such a loss is conceivable (e.g., by delaying Government efforts to recover stolen or defrauded money)." <u>Id.</u> at 1148 n.3.

It is true that, here, the actual bank robbery, and therefore the initial loss, was complete by the time Quackenbush became involved. Like-wise, Quackenbush was not the actual "getaway driver" from the rob-bery; rather, Nesbitt called Quackenbush for a ride after Nesbitt had already gone to another friend's house. Although the bank robbery was completed by the time Quackenbush became involved, we have no difficulty concluding that the district court could have found that Quackenbush's conduct, for which he was convicted, impaired both the police's effort to stop the bank robbers and the bank's efforts to

8

recover the stolen money. Quackenbush helped the bank robbers hide themselves and the money after the robbery (J.A. at 42 (testimony that Quackenbush harbored Nesbitt while he was in possession of stolen money and that Quackenbush's home was a safe place for him); 87 (Bishop's testimony that they stayed at Quackenbush's house in part because it was safe and because they were afraid of getting caught and that they gave him close to a thousand dollars for staying there)), and he also helped the bank robbers count and spend the money by driving them to the mall and taking them to the airport for their trip to El Paso, a trip that was presumably financed by the stolen money. Unlike the situation in Broughton-Jones, in which Broughton-Jones's perjury "caused no direct pecuniary harm to" the client that she allegedly bilked, see Broughton-Jones, 71 F.3d at 1147, here, the district court very well could have found that the bank's inability to recover the stolen money was directly attributable to Quackenbush's act of helping the bank robbers hide after the robbery. In other words, Quackenbush's conduct is more analogous to the situation explicitly left open in Broughton-Jones , in which we assumed that restitution could be available for perjury that"delay[ed] Government efforts to recover stolen or defrauded money." Id. at 1148 n.3. We therefore agree with the district court that Quackenbush could be held jointly and severally liable for the full amount of the bank's unrecovered losses notwithstanding his role as an accessory-after-the-fact.

B.

Having concluded that Quackenbush could be held jointly and severally liable for the full amount of the bank's losses, we now must address whether the district court's restitution order satisfies the MVRA.

Under the MVRA, "a sentencing court must make a factual finding keying the statutory factors to the type and manner of restitution ordered; it must find that the manner of restitution ordered is feasible." United States v. Dawkins, 202 F.3d 711, 716 (4th Cir.), cert. denied, 529 U.S. 1121 (2000); 18 U.S.C.A. § 3664(f)(2).**6** "A court

_____
**6** Although the MVRA requires that the sentencing court order full restitution without considering the defendant's economic circumstances, see

9

may comply with these requirements by announcing its findings on the record or by adopting adequate proposed findings contained within a presentence report." Id. (internal quotation marks omitted). In Dawkins, the district court instructed Dawkins that if he "were unable to pay the full restitution amount immediately, he could pay $200 per month beginning 60 days after his release." Id. Although we found that this instruction was sufficient to satisfy the district court's obligation to set a payment schedule, we nevertheless concluded that further clarification was necessary, stating that

> [o]ur review of the record indicates that the district court did not make all of the necessary factual findings. The court adopted the proposed findings of the presentence report (PSR), which contained a section concerning Dawkins' financial condition. The PSR adequately described Dawkins' financial resources and assets and his projected earnings. . . . However, the record is devoid of any factual finding that keys Dawkins' financial situation to the restitution schedule ordered or finds that the order is feasible. We therefore instruct the district court, when it reconsiders the restitution order on remand, to make such a finding on the record.

_____

18 U.S.C.A. § 3664(f)(1)(A), it also requires that the sentencing court "specify the manner and schedule by which the defendant is to pay restitution." United States v. Dawkins, 202 F.3d 711, 716 (4th Cir.), cert. denied, 529 U.S. 1121 (2000). 18 U.S.C.A. § 3664(f)(2) provides,

> (2) Upon determination of the amount of restitution owed to each victim, the court shall, pursuant to section 3572, specify in the restitution order the manner in which, and the schedule according to which, the restitution is to be paid, in consideration of--
>
> (A) the financial resources and other assets of the defendant, including whether any of these assets are jointly controlled;
>
> (B) projected earnings and other income of the defendant; and
>
> (C) any financial obligations of the defendant; including obligations to dependents.

18 U.S.C.A. § 3664(f)(2).

10

Id. at 716-17 (internal citations omitted). Here, as in Dawkins, the district court failed to "key[ ] [Quackenbush's] financial situation to the restitution schedule ordered or find[ ] that the order is feasible." Id. at 717. Instead, the district court simply required, without explanation, that Quackenbush pay the amount "in full immediately." (J.A. at 163.)[7] We therefore remand for the district court to make an appropriate finding on the record. See United States v. Ubakanma, 215 F.3d 421, 429 (4th Cir. 2000) (finding that restitution order under VWPA constituted plain error where district court failed to make findings to support its restitution award).[8]

III.

In sum, the district court did not err in concluding that Quackenbush could be held liable for the full amount of restitution to the bank even though the basis for his conviction was only as an accessory-after-the-fact. Quackenbush, however, is not liable for restitution to the car owner or the vehicle's insurer, and, thus, the district court

_____

[7] The district court adopted the findings of the presentence report. However, although the presentence report "adequately described [Quackenbush's] financial resources and assets," neither it nor the district court's findings "key[ ] [Quackenbush's] financial situation to the restitution schedule ordered or find[ ] that the order is feasible." United States v. Dawkins, 202 F.3d 711, 716-17 (4th Cir.), cert. denied, 529 U.S. 1121 (2000).

[8] Although we have already concluded that the district court could have found that Quackenbush's conduct impaired the bank's ability to recover the stolen money so as to warrant joint and several liability for the full amount of the bank's losses, we note that the district court had the discretion to apportion liability rather than finding Quackenbush jointly and severally liable for the full amount of the bank's losses. See 18 U.S.C.A. § 3664 (West 2000) (providing that where "more than 1 defendant has contributed to the loss of a victim, the court may make each defendant liable for payment of the full amount of restitution or may apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant"). Given the nature of Quackenbush's involvement in the robbery, which was less direct than that of the actual bank robbers, the district court may wish to clarify that it was aware that it could apportion liability pursuant to § 3664. To the extent that the district court has not already considered § 3664, it may do so on remand.

11

must adjust the restitution order accordingly. The district court also must key the manner and schedule by which Quackenbush must pay restitution to his financial situation. Accordingly, we reverse and remand for further proceedings consistent with this opinion.

REVERSED AND REMANDED

12