Opinion by Judge BERZON; Partial Concurrence and Partial Dissent by Judge BEA.
OPINION
BERZON, Circuit Judge:
Michael Tsosie entered into a plea agreement with the government and pleaded guilty to one count of abusive sexual contact in violation of 18 U.S.C. § 2244(a)(1). Pursuant to the plea agreement, the District Court sentenced Tsosie to eighteen months of imprisonment, a sentence well below the Guidelines range of 97 to 121 months. See Fed.R.Crim.P. 11(c)(1)(C). At the sentencing hearing, the victim’s counsel urged the District Court to order Tsosie to pay $31,994 in restitution to the victim’s mother to cover costs she incurred in making a series of trips between her home and the victim’s boarding school, 150 miles away. The District Court ordered the restitution.
Tsosie appeals the restitution order, arguing (1) that the mother’s travel expenses were not “incurred by the victim” and were therefore not subject to restitution under the applicable statute, and, in the alternative, (2) that the restitution award was issued in violation of the procedural and evidentiary requirements of 18 U.S.C. § 3664. We agree with the second but not the first of these arguments. We also hold that Tsosie has not waived his right to appeal the restitution order.
I. BACKGROUND
Michael Tsosie is a 62-year-old Navajo resident of Northern Arizona. In October, 2006, a fourteen-year old girl reported to her school guidance counselor that Tsosie had sexually abused her when she was five or six years old. The abuse occurred within the Navajo Indian Reservation. In February, 2009, the government filed an indictment in U.S. District Court charging Tsosie with three counts of aggravated sexual abuse of a minor in violation of 18 U.S.C. § 2241(c), and two counts of abusive sexual contact in violation of 18 U.S.C. § 2244(a)(1). See 18 U.S.C. § 1153(a) (providing that Indians committing certain offenses within Indian country “shall be subject to the same law and penalties” as other persons “committing ... the ... offense[ ] within the exclusive jurisdiction of the United States”).
Tsosie agreed to plead guilty to one count of abusive sexual contact in violation of 18 U.S.C. § 2244(a)(1) in exchange for the government’s promise to dismiss the other four counts. In the plea agreement, the parties stipulated that “an appropriate disposition of th[e] case” would be for Tsosie to “be sentenced to no more than 18 months” of imprisonment, have no contact *1216 with the victim, have no contact with any minor without the approval of a probation officer, register as a sex offender, and undergo sex offender treatment. The parties did not stipulate as to whether an order for restitution should issue. The plea agreement did state, however, under the heading “Maximum Penalties,” that “the court ... shall order the defendant to make restitution to any victim of the offense, unless, pursuant to 18 U.S.C. § 3663, the court determines that restitution would not be appropriate in the case.”[1]
At the change of plea hearing, the District Court explained the penalties for a violation of 18 U.S.C. § 2244(a)(1). The Court stated, in part, that:
[I]f any victim sustained any economic loss as a result of your crime, you’ll be required to pay restitution to the victim for that loss, and if you willfully fail to pay the restitution yet have the ability to pay some or all of it or if you fail to make bona fide efforts to find work or borrow money, your probation or supervised released could be revoked and you could be sent back to prison as a sanction to enforce collection of the restitution. Do you understand that?
Tsosie answered “yes.”
The presentence report (“PSR”) calculated Tsosie’s Guideline range as 97 to 121 months. The PSR also stated that the victim’s mother reported that the victim had suffered bouts of depression, stress, and anxiety, which the mother believed had contributed to physical problems, in-eluding gallstones. The mother requested $200 in restitution for travel expenses related to a court hearing that she and the victim attended, $1,800 for the treatment of the victim’s gallstones, and $31,994 “for expenses related to her traveling to Flagstaff to visit the victim each weekend.” Although the record is unclear as to the details, the victim apparently attended boarding school in Flagstaff, but she otherwise lived with her mother in Kaibeto, Arizona, approximately 150 miles away. The author of the PSR recommended awarding only the $200 in restitution, stating that she “was unable to determine that the additional $33,794 requested for medical and travel expenses was directly related to the instant offense.”
Appended to the PSR was an eleven-page spreadsheet listing approximately 140 trips, most of them between Kaibeto and Flagstaff and occurring within a three-year period. Next to each trip entry was a calculation of the costs of the trips according to the Internal Revenue Service rates in effect at the time of the trip. The $31,994 in travel expenses, which the District Court ultimately awarded, are the subject of this appeal.[2] One working day before the sentencing hearing, the victim’s counsel filed a declaration from Martha Scranton, the Behavioral Health Program Director for Native Americans for Community Action, stating that in February, 2006, she had prescribed a treatment plan for the victim, and that the plan required “the minor’s mother travel to her daughter’s dorm, [and] pick up her daughter or *1217 visit her daughter at the dorm each weekend.” Scranton averred that “in [her] professional opinion, the minor crime victim needed the added emotional support of a loved family member to assist in the recovery process.” This affidavit was the only sworn statement in the record.
At the sentencing hearing, the victim’s counsel asked the District Court to accept the “very lenient plea agreement,” but urged the Court to order Tsosie to pay the $31,944 in traveling expenses. The government, for its part, expressed some hesitation as to the appropriateness of awarding the $31,994 in restitution, but ultimately took no clear position on the matter. Tsosie’s counsel opposed the victim’s restitution request and also asked that, “if the Court’s inclined to impose that amount of restitution, ... a hearing be set and further documentation be provided.” The Court accepted the plea agreement, sentenced Tsosie to eighteen months of imprisonment, and, without hearing any further evidence or explaining its ruling, ordered him to pay $31,944 in restitution.
II. WAIVER OF APPEAL
Tsosie’s plea agreement contained an appeal waiver, providing, in part, that Tsosie waived “any right to appeal the imposition of sentence upon defendant under Title 18, United States Code, Section 3742 (sentence appeals).” Neither party disputes that a restitution order is a “sentence” within the meaning of the plea agreement. The government asks us to dismiss Tsosie’s appeal in light of this waiver.
We have explained that “ ‘[a]n appeal waiver will not apply if: (1) a defendant’s guilty plea failed to comply with Fed. R.Crim.P. 11; (2) the sentencing judge informs a defendant that she retains the right to appeal; (3) the sentence does not comport with the terms of the plea agreement; or (4) the sentence violates the law.’ ” United States v. Watson, 582 F.3d 974, 987 (9th Cir.2009) (quoting United States v. Bibler, 495 F.3d 621, 624 (9th Cir.2007)). We have also stated that we will not give effect to an appeal waiver if it is not “made knowingly and voluntarily.” United States v. Gordon, 393 F.3d 1044, 1050 (9th Cir.2004) (quotation omitted).[3]
Tsosie advances two reasons why the appeal waiver does not bar his challenge to the restitution order. First, he contends that the appeal waiver was not knowing because he was not afforded notice of the amount of restitution to be ordered. Second, he argues that the award of the victim’s mother’s expenses exceeded the District Court’s authority under 18 U.S.C. § 2248 and so constitutes an unlawful sentence. We agree with Tsosie’s first contention, and so address only it with regard to the waiver of appeal (although we later consider Tsosie’s challenge to the legality of the sentence on the merits).
Gordon establishes that a defendant cannot validly waive his right to appeal a restitution order if, at the time he agrees to waive the appeal, he is not given a reasonably accurate estimate of the amount of the restitution order to which he is exposed.[4] In Gordon, the defendant had agreed to waive “his right to appeal his *1218 ‘convictions, the judgment and orders of the Court,’ in addition to the right to appeal his sentence.” 393 F.3d at 1049. In his plea agreement, “Gordon agreed to pay restitution totaling $14,114,372.38 to [the victim] and $343,173.40 to the government,” id., but “[t]he government reserved the right in the plea agreement to argue for additional restitution for [the victim corporation’s] ‘lost opportunity’ costs for [certain embezzled] shares, investigation costs, and prejudgment interest.” Id. Despite this reservation of rights by the government and the waiver by the defendant, we held that Gordon’s plea agreement did not bar his appeal of the portions of the restitution order requiring Gordon to pay amounts not set forth in the plea agreement. Id. at 1050. We explained that “Gordon’s plea agreement was unclear about exactly what the amount of actual damages would be for such contested issues as the embezzled ... shares, prejudgment interest and investigation costs ... [so] Gordon ... did not waive his right to appeal these contested amounts.” Id. at 1050 (quotation omitted); see also United States v. Phillips, 174 F.3d 1074, 1076 (9th Cir.1999) (holding an appeal waiver ineffective because “the plea agreement [was] ambiguous regarding the amount of restitution”).
Tsosie’s plea agreement did not set forth any specific amount of restitution that Tsosie could be required to pay, or even any estimate of that amount. Because the plea agreement did not set forth the amount of restitution Tsosie would be ordered to pay, or a reasonable and fairly accurate estimate thereof, Tsosie “lacked sufficient notice to waive his right to appeal the restitution award.” Gordon, 393 F.3d at 1050.
The government maintains that Gordon and Phillips are not controlling because they involved restitution orders issued pursuant to 18 U.S.C. § 3663 and § 3663A, not § 2248, the restitution provision applicable here. In the government’s view, the outcomes in those eases are explained not by general principles of when a defendant can knowingly waive appeal of a restitution order, but instead by specific provisions in § 3663 and § 3663A requiring a defendant to have notice as to the amount of restitution to be ordered to non-victims under those statutes for the defendant to waive his appeal of the restitution order. The government maintains that, because those provisions have no analog in § 2248, the notice requirements discussed in Gordon and Phillips do not apply here.
The government misreads the statutes and our precedents. Section 3663(a)(1)(A) provides, in part, that “[t]he court may also order, if agreed to by the parties in a plea agreement, restitution to persons other than the victim of the offense.” 18 U.S.C. § 3663(a)(1)(A). Section 3663A(a)(3) provides, for its part, that “[t]he court shall also order, if agreed to by the parties in a plea agreement, restitution to persons other than the victim of the offense.” Id. § 3663A(a)(3). These provisions deal with a sentencing court’s power and discretion to order restitution to non-victims, not with whether notice of the amount of restitution must be provided to waive appeal of a restitution order. As a result, these provisions may be relevant to determining whether a restitution order is an illegal sentence as to which an appeal waiver is not effective, cf. United States v. Broughton-Jones, 71 F.3d 1143, 1147-48 (4th Cir.1995), but they are not helpful in determining whether the waiver itself was knowing, the issue as to which Phillips and, in particular, Gordon are dispositive in this case.[5] As to that question, there is *1219 no relevant textual difference between § 2248 and the other two restitution provisions, so the reasoning of Phillips and Gordon controls, even though restitution here was ordered pursuant to § 2248.
Our cases also lend no support to the government’s argument. Neither Gordon nor Phillips cites § 3663(a)(1) or § 3663A(a)(3).[6] Indeed, the portions of the restitution order appealed in Gordon did not even involve restitution to a non-victim, which excludes the possibility that the relevant portion of § 3663(a)(1) or § 3663A(a)(3) somehow lurks sub silentio behind that case’s holding, as we would be required to believe to accept the government’s reading of the case.
Although Gordon and Phillips did not explain why some precision in the plea agreement is necessary to have a knowing appeal waiver, this case illustrates one reason for the requirement. Unlike terms of imprisonment, which have statutory máximums and are meted out by judges aided by the Sentencing Guidelines, there is neither a statutory limit nor any guidelines covering the amount of restitution orders, and they may, as here, depend on a request or submission by a third party. A defendant and his attorney will frequently be unable to predict whether there will be such a request and, if so, in what amount. As a result, in many cases, a defendant will plead guilty, as Tsosie appears to have done here, believing that he will not owe any restitution, when, in fact, the sky is the only limit to his potential exposure. This possibility explains why Gordon and Phillips require a plea agreement to set forth the amount of restitution to which a defendant is exposed for the defendant to be able knowingly to waive his appeal of the restitution order.
In sum, we conclude that Tsosie’s waiver of appeal is ineffective as to the restitution order and so will consider his challenges to that order on their merits.
III. WHETHER THE COSTS WERE INCURRED BY THE VICTIM
“Federal courts have no inherent power to award restitution, but may do so only pursuant to statutory authority.” United States v. Follet, 269 F.3d 996, 998 (9th Cir.2001). Title 18 U.S.C. § 2248 both empowers and requires a court to order certain sex offenders to pay “the full amount of the victim’s losses.” 18 U.S.C. § 2248(b)(1). “The full amount of the victim’s losses” are defined as “any costs incurred by the victim” for, among other things, “necessary transportation,” “medical services relating to physical, psychiatric, or psychological care,” and “any other losses suffered by the victim as a proximate result of the offense.” Id. § 2248(b)(3).
In Follet, this Court held that § 2248 did not authorize a court to order a defendant to pay restitution to a counseling facility that had provided free care to his victim. 269 F.3d at 1000. We explained that “[a] cost for which the victim will never have to pay because the services will be provided directly by a governmental or charitable organization is not ‘incurred’ by the victim, even if that organization will *1220 incur costs for the benefit of the victim.” Id.; see 18 U.S.C. § 2248(b)(3) (defining the losses subject to restitution as those “costs incurred by the victim”). Tsosie argues that the victim’s mother’s driving expenses were likewise not “incurred by the victim,” and therefore are not permitted by the statute. We cannot agree.
Section 2248(c) defines “victim” as: the individual harmed as a result of a commission of a crime under this chapter, including, in the case of a victim who is under 18 years of age, incompetent, incapacitated, or deceased, the legal guardian of the victim or representative of the victim’s estate, another family member, or any other person appointed as suitable by the court, but in no event shall the defendant be named as such representative or guardian.
18 U.S.C. § 2248(c). This definition is not a model of legislative drafting. Nonetheless, it seems apparent enough that the purpose of the definition’s reference to “legal guardians” is to permit restitution of costs that legal guardians of minor victims, acting in their capacity as legal guardian, incurred as a result of an offense.
Of course, statutory text, not judicial intuitions of statutory purpose, is the starting point of statutory analysis. The text of § 2248(c) is open to at least one of two readings. On the first reading, urged by the government, the definition is something of a blunt instrument: The statute “includ[es]” a legal guardian within the definition of “victim”; therefore any loss incurred by the legal guardian of a minor as a result of an offense is subject to restitution. On this reading, if the victim’s legal guardian became depressed upon learning of the offense and so had to attend counseling sessions, the cost of that counseling would be subject to restitution. On the other, narrower, reading, the provision permits restitution only of those costs incurred by a legal guardian acting in her capacity as legal guardian — in other words, costs she incurred on behalf of the minor. Thus, for example, a legal guardian who paid for her son’s medical treatment would be entitled to restitution of those costs, but she could not expect to recover the income she lost when she took a day off work because she was too distraught by her son’s victimization to show up at the office.
While common sense favors the latter reading, we need not, and do not, decide whether the statute is thus limited. On either of the two possible readings of § 2248(c), the mother’s travel expenses may be subject to restitution.
On the blunt reading, there is, unsurprisingly, little need for finesse: The mother is the legal guardian of the victim, and therefore she may recover her travel expenses so long as they were proximately caused by the offense.[7] If the narrower reading is the correct one, a more tortuous path must be followed, but it leads us to the same place: The mother maintains she made the trips to Flagstaff because the victim’s behavioral health counselor ordered them as part of a treatment plan that, according to the affidavit of the victim’s counselor, required “the minor crime victim [to have the] added emotional support of a loved family member to assist in the recovery process.” The mother therefore traveled to Flagstaff in her capacity as a “loved family member.” A “loved family member” is, of course, not the same thing as a “legal guardian.” But if the mother had paid a different loved family *1221 member to make the trips (say, the victim’s grandfather), she would be entitled to restitution: She would have made the payments on her daughter’s behalf in her capacity as her daughter’s legal guardian, much as if she had paid medical bills on her daughter’s behalf in that capacity. The fact that the mother made the trips herself rather than paying another family member to make the trips should not dis-entitle her to restitution of the expenses associated with the trips.
We therefore conclude that even if the mother made the trips in her capacity as a loved family member, she incurred the costs of the trips in her capacity as legal guardian — that is, she incurred them on behalf of her daughter. On the narrower reading, then, we end up in the same place as we did on the blunt one. We therefore need not select between them to conclude that the mother’s travel expenses may have been “incurred by the victim” within the meaning of 18 U.S.C. § 2248(b)(3).
IV. TSOSIE’S EVIDENTIARY AND PROCEDURAL CHALLENGES
Tsosie mounts an additional challenge to the restitution order: He asks us to vacate the order on the ground that it lacked an adequate evidentiary basis and that the District Court insufficiently explained its reasons in issuing the order. We agree, and so vacate the order and remand for the District Court to permit the introduction of additional evidence, to reassess in light of that evidence whether to award the requested restitution, and to explain its reasoning in making that assessment.
In issuing the restitution order, the District Court was obliged to comply with the procedures set forth in 18 U.S.C. § 3664. See 18 U.S.C. § 2248(b)(2). Section 3664(e) provides, in part, that “[a]ny dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence,” and that the “burden of demonstrating the amount of the loss sustained by a victim as a result of the offense shall be on the attorney for the Government.” Id. § 3664(e). In United States v. Gamma Tech Industries, Inc., 265 F.3d 917 (9th Cir.2001), we read the burden language less than literally, explaining that “[s]o long as the district court orders defendants to pay restitution only after someone proves the amount by a preponderance of the evidence, there is no reason a non-party ... can’t carry the burden.” Id. at 924 (emphasis in original).
We have understood § 3664 to impose a number of related obligations on a district court issuing a restitution award. For one, we have viewed § 3664 as “contemplating] that the district court will set forth an explanation of its reasoning, supported by the record, when a dispute arises as to the proper amount of restitution.” United States v. Waknine, 543 F.3d 546, 556 (9th Cir.2008).
In addition, we have understood § 3664(e)’s mandate that “[a]ny dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence” as requiring that the evidence supporting a district court’s restitution order meet a threshold level of adequacy. For that reason, in Waknine, we reversed a restitution order that was based only on “one-page loss summaries” provided by victims in affidavits, even though the defendant had not introduced evidence challenging the affidavits. Id. at 557. In so ruling, we explained that “the government [had] offered insufficient evidence to prove that it [was] more likely than not that the victims lost the amounts listed in ... the[ ] summaries.” Id. at 557; see also id. (explaining that “a district court may only utilize evidence that possesses sufficient indicia of reliability to support its probable accura *1222 cy” (quotation omitted)); United States v. Andrews, 600 F.3d 1167, 1172 (9th Cir.2010) (holding that a restitution order violated 18 U.S.C. § 3664(e) because it was issued in exclusive reliance on the victim’s evidence as to causation, and the defendant’s expert witness was not allowed to testify). As these precedents make clear, § 3664(e)’s reference to a “preponderance of the evidence” requires that, when there is a dispute as to restitution, a restitution order must be supported by evidence in the record showing that it is more likely than not that the defendant’s offense proximately caused the losses for which restitution was awarded and that it did so in the amounts awarded.
In sum, 18 U.S.C. § 3664 requires both that a district court set forth its reasons in resolving a dispute over restitution and that a restitution award, if one issues, be adequately supported by evidence in the record. We conclude that the District Court’s restitution order violated both these requirements.
First, the parties disputed the proper amount of restitution, but the District Court set forth no explanation of its reasoning. At the sentencing hearing, Tsosie questioned whether “sufficient evidence has been provided” to order restitution of the travel expenses. He argued that many of the trips listed on the spreadsheet may not have been made pursuant to the counselor’s treatment plan or been otherwise caused by Tsosie’s offense. After expressing these concerns, Tsosie requested a restitution hearing and that “further documentation be provided.”
The District Court did not respond to any of these objections or requests. Instead, after asking to view the spreadsheet, the District Court stated only. “All right. I’ll overrule the objections and grant the amount of restitution requested.” That’s it. In short, the District Court did nothing to explain its reasoning in deciding to award restitution or in calculating the size of the award.
True, the amount of restitution ordered corresponds precisely to the amount the victim’s mother claimed on the spreadsheet for travel costs, so it is easy to reconstruct how the District Court arrived at that figure. Thus, there is some merit to the government’s contention that it would be artificial to require the District Court expressly to state that it relied on the spreadsheet.
But the spreadsheet alone is not enough to support the restitution award. As an initial matter, no sworn statement in the record supports the spreadsheet. Aside from the spreadsheet itself, the only pertinent evidence in the record is an unsworn letter from the victim’s mother containing only the vague statement that she had “had to travel to Flagstaff to visit or bring home my daughter every weekend at the request of counselors and doctors,” and the affidavit from the victim’s mental health counselor, stating that she instructed the mother to visit her daughter on a weekly basis, but not reporting that the mother actually made the trips or indicating the distance of the trips or the mode of transportation used. The PSR offers no support either. To the contrary, it states that the probation office “was unable to determine [that the travel expenses were] directly related to the instant offense,” and so recommended that they not be awarded.
In addition to being unsupported by any sworn affidavit, the spreadsheet contained a number of oddities that the District Court did not acknowledge. For one, almost all of the trips are listed as “RT” (presumably meaning “round trip”), but approximately half are listed as 300 miles and the other half are listed as 600 miles. The 600 mile trips are accompanied by the cryptic annotation “600 Miles RT (2),” and a note reading “Victim checked out to go *1223 home (Kaibeto) and go bac [sic] (Flagstaff)”. One is likely supposed to understand that the mother made two round trips between Kaibeto and Flagstaff on the same day, but it is unclear why such double round trips would be part of the victim’s treatment plan, let alone so frequent. Driving 600 miles on a single day would have allowed the victim hardly any time at home, and seems a strange way to provide the “emotional support” of a loved family member. Further, some of the driving expenses on the spreadsheet have nothing to do with the “treatment plan.” Most of the expense entries are followed by an asterisk, indicating that the expense was incurred “Per Northern Arizona Healthcare Treatment Plan in conjunction with school psychologist.” But a number of entries are not followed by the asterisk, including various trips to the hospital (quite possibly for the gallbladder treatment the victim underwent), as well as such items as “drove victim back to school” at the beginning of the school year. In addition, the entry for one trip states “Took Bus,” yet the mileage for the trip is still calculated at the IRS rate for a private vehicle. Finally, the counselor’s affidavit states that she instructed the mother to visit her daughter “each weekend,” yet the spreadsheet includes some trips occurring within the same week as one another.
Because it was not supported by any affidavit explaining how the trips and charges were part of the prescribed treatment plan, and because many of the expenses are difficult to interpret or seem inappropriate, the spreadsheet was an inadequate evidentiary basis to support the restitution award. The spreadsheet was “insufficient evidence to prove that it is more likely than not that the victim[ ] lost the amounts” for which restitution was ordered as a proximate result of Tsosie’s offense. Waknine, 543 F.3d at 557. We also conclude that, especially in light of the spreadsheet’s deficiencies, the District Court failed to “set forth an [adequate] explanation of its reasoning, supported by the record.” Id at 556. We temper our holding with the observation that, because district courts possess “a degree of flexibility in accounting for a victim’s complete losses,” id at 557, a different question would be presented had the district judge acknowledged the spreadsheet’s deficiencies and then set forth why he nonetheless thought the spreadsheet was an adequate evidentiary basis to support the restitution award.
V. CONCLUSION
For the foregoing reasons, the restitution order is VACATED. We REMAND this case to allow the District Court to reassess whether Tsosie must pay restitution and, if so, the amount of such restitution. In doing so, it should consider Tsosie’s objections to the restitution requested and permit him to enter contrary evidence, holding an evidentiary hearing if one proves necessary after documentary submissions. The District Court should also provide a statement of its reasoning in determining whether to order restitution and in calculating the amount of any restitution ordered.
VACATED and REMANDED.

. The plea agreement’s reference to the District Court’s discretion under 18 U.S.C. § 3663 appears erroneous. Tsosie was convicted under 18 U.S.C. § 2244(a)(1). His case was governed by the mandatory restitution provision codified at 18 U.S.C. § 2248. See 18 U.S.C. § 2248(a) ("Notwithstanding § 3663 or 3663A, ... the court shall order restitution for any offense under this chapter” (emphasis added)). Because the parties have not raised this issue, we only observe that this reference to the District Court’s discretion buttresses our conclusion that Tsosie's waiver of appeal was not knowing with regard to the restitution order.

. The District Court did not discuss the other restitution requests, and so implicitly denied them as separate expenses.

. Although Fed.R.Crim.P. 11 requires a court to inform a defendant of and "determine that a defendant understands ... the terms of any plea-agreement provision waiving the right to appeal,” Gordon's "knowing and voluntary” requirement for appellate waiver is, as will appear, not necessarily satisfied by compliance with Rule 11 alone.

. Because Tsosie’s plea agreement provided no estimate of the amount of restitution to be awarded, we need not determine whether, under our precedents, a plea agreement that contained an accurate and fairly circumscribed estimate of the range of the amounts of the restitution that may be ordered would provide sufficient notice to the defendant for *1218 him knowingly to waive his appeal as to a restitution order.

. United States v. Broughton-Jones, 71 F.3d 1143 (4th Cir.1995), held that the appeal waiver in that case was knowing, before then *1219 deciding that it would consider the appeal in light of the "illegal sentence” exception to the general rule that courts enforce knowing and voluntary plea waivers. Id. at 1146-47. For that reason, contrary to the government’s suggestion at oral argument, Broughton-Jones is of no help in interpreting Gordon 's and Phillips 's conclusions that the appeal waivers in those cases were not knowing.

. Phillips does discuss a similar provision, § 3663(a)(3), which provides that a "court may also order restitution in any criminal case to the extent agreed to by the parties in a plea agreement,” 18 U.S.C. § 3663(a)(3), but does not rely on it in deciding that the appeal waiver was not knowing. See 174 F.3d at 1076-77.

. As the parties have not raised the issue, we do not consider whether the expense of regularly traveling the 150-mile distance between the daughter’s boarding school and the mother’s residence was a sufficiently foreseeable result of Tsosie’s crime to have been incurred as "a proximate result of the offense.” 18 U.S.C. § 2248(b)(3).