**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────

**No. 08-5220**

─────────

UNITED STATES OF AMERICA,

                Plaintiff - Appellee,

     v.

ALFREDO HOMES SUSI,

                Defendant - Appellant.

─────────

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte. Frank D. Whitney, District Judge. (3:07-cr-00119-FDW-DCK-4)

─────────

Argued: March 25, 2010              Decided: May 14, 2010

─────────

Before DUNCAN and AGEE, Circuit Judges, and HAMILTON, Senior Circuit Judge.

─────────

Affirmed in part, vacated in part, and remanded by unpublished per curiam opinion.

─────────

**ARGUED:** Michael David Gelety, Fort Lauderdale, Florida, for Appellant. Ellen Ruth Meltzer, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Lanny A. Breuer, Assistant Attorney General, Criminal Division, Patrick M. Donley, Peter B. Loewenberg, Fraud Section, Criminal Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

─────────

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Alfredo Homes Susi ("Susi") appeals his conviction of one count of conspiracy to defraud, in violation of 18 U.S.C. § 371, and multiple counts of aiding and abetting wire fraud, in violation of 18 U.S.C. § 1343, as well as his sentence. Susi alleges insufficient evidence existed for his convictions, prosecutorial misconduct, multiple errors at trial, and argues that his sentence is unreasonable and should be vacated. For the following reasons, we affirm all the convictions as adjudicated by the district court, but vacate Susi's sentence and remand for resentencing.

I.

Susi's convictions arise from his participation in a telemarketing sweepstakes scheme that operated in Costa Rica.[1] The scheme consisted of the following pattern: first, the "opener," an employee at the call center, would call and inform the victim that he had won second prize, usually several hundred thousand dollars, in a sweepstakes. The telemarketer would fraudulently represent himself as a federal agent of a non-

---

[1] Approximately sixteen call centers in Costa Rica ran similar schemes, as evidenced by a number of recent federal prosecutions. See, e.g., United States v. Llamas, ___ F.3d ___, 2010 WL 963195 (4th Cir. 2010).

existent "United States Sweepstakes Security Commission," or of the "United States Sweepstakes Security Bureau," or some similar moniker. The opener would then tell the victim that, in order to claim the prize, he must wire several thousand dollars via Western Union to "Lloyds of London of Costa Rica" as an insurance premium to insure delivery of the money. If the victim was successfully persuaded to send money, a co-conspirator known as a "loader" would call again and tell him that a mistake had been made and that the victim had actually won first prize, typically several million dollars. The loader would tell the victim that, because the prize was larger, the insurance fees would also be higher. The co-conspirators would continue to call and "load" a victim for as long as the victim continued to wire money. The sweepstakes concept was a pure fraud and never existed so no prize money was ever paid to any of the victims of the scheme.

The call center at issue in this case (hereinafter "the Kalchstein call center") was operated by Martin Kalchstein ("Kalchstein"), a former business associate of Susi's. Susi began working at the call center in Costa Rica during May 2005 but left during October 2005 and returned to the United States. Susi called victims, initially playing the part of an opener but eventually working as a loader. Kalchstein testified during trial that Susi earned between $50,000 and $60,000 in

commissions during his time working at the call center and directly caused approximately $250,000 in losses to victims. Kalchstein also testified that the call center as a whole took in about $40,000 per week and approximately $2.5 to $3 million total during its total operating history.

The jury returned a verdict convicting Susi on all counts, and also rendered a forfeiture verdict of approximately $1,885,000.[2]

The Presentence Investigation Report ("PIR") determined that the actual loss attributable to the Kalchstein call center during Susi's time working there was approximately $760,000. This figure was calculated by multiplying Kalchstein's estimation that the call center took in an average of $40,000 per week by the amount of time Susi was on site—roughly 19 weeks. The PIR estimates that the total loss for all sixteen Costa Rican call centers utilizing similar schemes was $4.2 million, which included the Kalchstein call center.

During Susi's sentencing hearing, the defense withdrew its objections to the advisory Guidelines range of 168 to 210 months' imprisonment, and instead argued for a variance based on

---

[2] Susi and his co-conspirators were prosecuted in the Western District of North Carolina because Western Union, the wire service they used to facilitate the fraud scheme, processed funds through Charlotte, North Carolina.

4

Susi's purportedly limited role in the conspiracy. Susi's brother, Sam Susi ("Sam"), testified for the defense at the hearing. Sam attempted to show that Susi's involvement in the conspiracy was relatively limited and that he was being treated differently from other similarly-situated defendants because their sentences had been based on the amount of loss directly attributable to them, and not on the amount of loss caused by the conspiracy as a whole.

The district court imposed a within Guidelines sentence of 180 months' imprisonment for each count of aiding and abetting wire fraud, to run concurrently with each other, and an additional concurrent sentence of 60 months' imprisonment for conspiracy to defraud. The district court entered a separate order of restitution of $4.2 million. This Court has jurisdiction over Susi's appeal pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

II.

A.

Susi first argues that the district court erred by denying his motion for judgment of acquittal. Although he made the

5

motion in district court on general grounds,[3] he makes an insufficiency of the evidence argument on appeal. Specifically, Susi contends that "the government had not proven one overall conspiracy." (Appellant's Br. 16-17). Susi's argument here is confusing but we interpret it to mean that, although he concedes that the evidence was sufficient to prove his involvement in the Kalchstein center conspiracy, Susi argues that the evidence was insufficient to prove the existence of a larger conspiracy consisting of other call centers. Moreover, Susi argues that he "withdrew from any arguable and limited conspiracy . . . with the raid of the call center coming eight (8) months after Susi left . . . ." (Appellant's Br. 21).

In reviewing the sufficiency of the evidence we must determine whether, viewing the evidence in the light most favorable to the government, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. Glasser v. United States, 315 U.S. 60, 80 (1942). This court will uphold the jury's verdict if there is substantial evidence to support it. United States v. Beidler, 110 F.3d 1064,

---

[3] In his brief, Susi contends that he moved for acquittal based on insufficiency of the evidence. However, Susi only made a general motion for acquittal, simply stating that "I found various defects in the government's case." (J.A. 229). In fact, the district court asked defense counsel whether they were "going to make argument as to" the motion, and defense counsel answered "No." (S.J.A. 41).

6

1067 (4th Cir. 1997). Because Susi moved for acquittal only on general grounds, we review for plain error. See United States v. Olano, 507 U.S. 725, 732-34 (1993).

Susi's argument that he was charged with an overall conspiracy involving call centers beyond the Kalchstein call center is based on a misreading of the record. Contrary to Susi's contentions on appeal, the indictment charges Susi only with being a member of the Kalchstein call center conspiracy. The evidence presented at trial was limited to proving that Susi was a member of the Kalchstein call center conspiracy. Although other call centers operating in Costa Rica were briefly mentioned during trial, there were no details elicited from witnesses as to the other call centers.[4] Because Susi concedes that the evidence was sufficient to prove his involvement with the Kalchstein call center conspiracy, his insufficiency of the evidence claim clearly fails.

Susi's argument that he withdrew from the conspiracy is also without merit. Withdrawal from a conspiracy "requires the defendant to take affirmative actions inconsistent with the object of the conspiracy and communicate his intent to withdraw

---

[4] In fact, after Special Agent Vernon Roberson ("Roberson") mentioned the other "16 locations," the prosecution redirected Roberson's focus to the "call center that was associated with Mr. Kalchstein and Mr. Susi." (J.A. 51).

7

in a manner likely to reach his accomplices." United States v. Cardwell, 433 F.3d 378, 391 (4th Cir. 2005). "A mere cessation of activity in furtherance of the conspiracy is insufficient." United States v. Walker, 796 F.2d 43, 49 (4th Cir. 1986). Instead, "a defendant must provide evidence that he acted to defeat or disavow the purposes of the conspiracy." United States v. Barsanti, 943 F.2d 428, 437 (4th Cir. 1991).

Susi made no such showing. Although Allen Fialkoff ("Fialkoff"), a co-conspirator, testified that Susi told him that he planned to quit working at the call center because Susi thought it "wasn't the right thing to do," (J.A. 143), this conversation took place prior to the time Susi actually left the call center, and there is no evidence that he communicated this sentiment to anyone else. Instead, Susi did not "indicate that he was going to take any steps to make right what he had done," (J.A. 95), and one day "he just didn't come in." (J.A. 107). Consequently, there is substantial evidence to support the jury's conclusion that Susi did not withdraw from the conspiracy.


B.

Susi next argues that "[t]hroughout the course of the trial, the prosecutor engaged in a pattern of prejudicial

8

misconduct, the cumulative effect of which destroyed" Susi's right to a fair trial. (Appellant's Br. 26).

As to an allegation of prosecutorial misconduct, this Court reviews a district court's factual findings for clear error and its legal determinations de novo. United States v. Washington, 398 F.3d 306, 310 (4th Cir. 2005). In determining whether prosecutorial misconduct occurred, this Court first evaluates whether the prosecutor's remarks or conduct were improper. United States v. Wilson, 135 F.3d 291, 297 (4th Cir. 1998). However, if this Court finds that the remarks were improper, the conduct "do[es] not always mandate retrial. The relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." United States v. Mitchell, 1 F.3d 235, 240 (4th Cir. 1993) (quotation omitted).

In evaluating whether the defendant was prejudiced, this Court considers the following factors:

> (1) the degree to which the prosecutor's remarks had a tendency to mislead the jury and to prejudice the defendant; (2) whether the remarks were isolated or extensive; (3) absent the remarks, the strength of competent proof introduced to establish the guilt of the defendant; (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters; (5) whether the prosecutor's remarks were invited by improper conduct of defense counsel; and (6) whether curative instructions were given to the jury.

9

<u>United States v. Scheetz</u>, 293 F.3d 175, 186 (4th Cir. 2002).

1.

Susi first objects to certain comments made by the prosecutor during closing argument. Specifically, Susi objects to remarks to the effect that the crime was particularly heinous, that Susi was of bad character, and that the victims were elderly and vulnerable.

Susi's argument that the prosecutor improperly commented on the victims' age or vulnerability is without merit. The prosecutor questioned the elderly witnesses about their age, the origin of the money they sent to the call centers, and their testimony that losing the money created hardships for them. These lines of questioning were relevant and proper. Thus, the district court correctly held that "it is relevant questioning to show that the nature of this conspiracy is to find a person with liquidity, good credit, and hit[] them daily with an additional requirement of funds . . . ." (J.A. 182).

There is also no evidence that the prosecutor's statements that, for example, the crime was "horrific," or that Susi was a "greedy, merciless man," crossed the line of vigorous advocacy. This Court has held that "prosecutors enjoy considerable latitude in presenting arguments to a jury, because 'the adversary system permits the prosecutor to 'prosecute with

10

earnestness and vigor.'’” <u>Bates v. Lee</u>, 308 F.3d 411, 422 (4th Cir. 2002) (quoting <u>United States v. Young</u>, 470 U.S. 1, 7 (1985)). Consequently, “[c]ommitted advocates do not always present antiseptic closing statements, and the jury is entrusted within reason to resolve such heated clashes of competing views.” <u>Id.</u>

Furthermore, even assuming arguendo that the prosecutor's remarks were improper, there is no evidence that the comments “so infected the trial with unfairness as to make the resulting conviction a denial of due process.” <u>Mitchell</u>, 1 F.3d at 240 (quotation omitted). The comments were relatively isolated, and the district court gave a curative instruction to the jury to “disregard” the prosecutor's comment as to Susi's character. <u>See Scheetz</u>, 293 F.3d at 186.

## 2.

Second, Susi alleges that the prosecutor committed a so-called “Golden Rule” violation[5] during closing, asking “the jury

---

[5] When counsel argues the “Golden Rule,” they argue that “the jurors should put themselves in the shoes of the plaintiff and do unto him as they would have him do unto them under similar circumstances. Such an argument is universally recognized as improper because it encourages the jury to depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence.” <u>Ivy v. Security Barge Lines, Inc.</u>, 585 F.2d 732, 741 (5th Cir. 1977); <u>Ins. Co. of N. Am., Inc. v. U.S. Gypsum Co.</u>, 870 F.2d 148, 154 (4th Cir. (Continued)

to put themselves into the position of the victims." (Appellant's Br. 29). Specifically, Susi objects to the prosecutor's statement that "we all may think that you'd never have fallen for this scheme. First of all, none of us are going to know what we're like at a later, older age." (J.A. 207).

However, this remark does not clearly violate the Golden Rule. The prosecutor did not improperly appeal to the jurors' sympathy, nor did he ask the jury to make a decision as if they were in the victims' position. Instead, the statement called for the jurors to decide whether the witnesses' testimony was plausible based on context. See United States v. Kirvan, 997 F.2d 963, 964 (1st Cir. 1993) ("[T]he invitation is not an improper appeal to the jury to base its decision on sympathy for the victim but rather a means of asking the jury to reconstruct the situation in order to decide whether a witness' testimony is plausible.").

Moreover, Susi has not carried his burden of showing that the remarks, even if improper, "prejudicially affected [his] substantial rights so as to deprive [him] of a fair trial." Mitchell, 1 F.3d at 240 (quotation omitted). The district court gave a curative instruction to the jury, reminding them that

1989) ("The law is clear that . . . it is improper to ask jurors to place themselves in the position of a party.").

12

"their duty is to determine the truth of this matter; and they determine the truth of this matter by making a decision based exclusively on the evidence." (J.A. 213).

### 3.

Finally, Susi objects to the prosecutor's call to the jury to "send a message" to the community. (See J.A. 210). Even if we assume the remark to have been improper, it was not unduly prejudicial. Not only did the district court give the general curative instruction mentioned above, but the court also specifically reminded the jury that "[y]our duty is not to be sending deterrent signals. Deterrence issues are matters for the Court." (J.A. 213). Thus, even if the comment were improper, "[t]he slight prejudice suffered by [Susi] was most assuredly cured by the district court's . . . curative instruction." Scheetz, 293 F.3d at 186.

### C.

Susi next contends that the cumulative effect of certain evidentiary rulings by the trial court denied him a fair trial. Specifically, Susi alleges that the district court erred when it denied the defense motion for mistrial "after there was improper and prejudicial contact with jurors by a member of the prosecution's staff," (Appellant's Br. 38), and because

13

prosecution witness Kalchstein "made direct and prejudicial comments on Appellant Susi's right to remain silent." (Appellant's Br. 40).

This Court reviews evidentiary rulings and denials of a motion for mistrial for an abuse of discretion. United States v. Bostian, 59 F.3d 474, 480 (4th Cir. 1995).

> Pursuant to the cumulative error doctrine, the cumulative effect of two or more individually harmless errors has the potential to prejudice a defendant to the same extent as a single reversible error. . . . To satisfy this requirement, such errors must so fatally infect the trial that they violated the trial's fundamental fairness.

United States v. Basham, 561 F.3d 302, 330 (4th Cir. 2009) (internal quotations and citations omitted).


1.

Susi alleges that, during trial, Ms. Bachman ("Bachman"), who was "working with the U.S. Attorney's Office contacted or spoke to one of the jurors," specifically, Alternate Juror 1. (J.A. 215; 220). Upon investigation by the district court, Bachman denied having contact with a juror and instead stated that the entirety of her conversation during the sidebar at issue was with a "court security officer [who] was moving my bags off of the chair and I apologized to him for putting it on the wrong chair. He informed me that his chair was squeaking. .

14

. . . That was the entire extent of my conversation during sidebar." (J.A. 225).

The district court found that

> Mr. Susi did, in fact, hear something, but he misunderstood what he heard.
>   There's consistent testimony, or rather consistent proffers from the court security officer, Ms. Bachman and Alternate 1 that there was a brief, kind of a friendly exchange between Ms. Bachman and the court security officer about the squeaky chair. And Alternate 1 did hear the reference to the "squeaky chair" and apparently turned around, or made some passing comment to the court security officer having to fix the squeaky chair.
>     . . . .
>   So I do not believe that [there] was any inappropriate contact with Alternate 1.

(J.A. 228-29).

In evaluating allegations of extrajudicial juror contact, this Court conducts the following analysis:

> First, "[t]he party who is attacking the verdict bears the initial burden of introducing competent evidence that the extrajudicial communications or contacts were more than innocuous interventions." Second, upon satisfaction of this "minimal standard . . ., the [presumption of prejudice] is triggered automatically." And, "[t]he burden then shifts to the prevailing party to prove that there exists no 'reasonable possibility that the jury's verdict was influenced by an improper communication.'"

Basham, 561 F.3d at 319 (quoting United States v. Cheek, 94 F.3d 136, 141 (4th Cir. 1996)) (internal citations omitted). In determining whether contact was innocuous, this Court considers the following factors: "(1) any private communication; (2) any private contact; (3) any tampering; (4) directly or indirectly

15

with a juror during trial; (5) about the matter before the jury." Cheek, 94 F.3d at 141.

Susi has not carried his initial burden of "introducing competent evidence that the extrajudicial communications or contacts were more than innocuous interventions." Id. at 141 (internal quotation omitted). First, the district court did not abuse its discretion by finding that Bachman did not actually have extrajudicial contact with a juror. Alternatively, even assuming that Bachman did speak with the alternate juror, the communication would have been innocuous. There is no evidence that any communication, if it occurred, was "about the matter before the jury," id., and the alternate juror did not ultimately participate in deliberations. Consequently, the district court did not abuse its discretion in finding that there has been "no impropriety arising out of that instance in this trial." (J.A. 229).

2.

Susi argues that Kalchstein, a government witness, inappropriately made "direct and prejudicial comments on Appellant Susi's right to remain silent." (Appellant's Br. 40). Susi contends that Kalchstein's statement that other co-conspirators like Dunkan and Burkes "lied, and . . . ended up in jail with a much stiffer penalty for lying," (J.A. 95-96) was "a

16

clear comment on the non-testifying Susi's exercise of his Right to Silence." (Appellant's Br. 40). Second, Susi argues that the following exchange was also an improper comment on his decision not to testify:

> Q: You were asked by Mr. Young: Where he comes from in Texas, a thief is also a liar?
> A: I guess he'd say the same about his client then if I was his client and he was on the witness stand --

(J.A. 111). Because defense counsel did not object to this testimony during trial on due process grounds, we review for plain error. <u>Olano</u>, 507 U.S. at 732-34.

Susi's due process rights were not violated by Kalchstein's testimony. While it is true that "[t]he Constitution . . . 'forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt,'" <u>United States v. Francis</u>, 82 F.3d 77, 78 (4th Cir. 1996) (quoting <u>Griffin v. California</u>, 380 U.S. 609, 615 (1965)), the statements to which Susi objects were not made by the prosecutor, nor were they directly prompted by prosecutorial questioning. Moreover, the testimony at issue clearly was not "of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." <u>United States v. Anderson</u>, 481 F.2d 685, 701 (4th Cir. 1973) (quotation omitted). Instead, Kalchstein

17

was merely explaining his own reasons for testifying honestly and emphasizing that he was telling the truth.

Consequently, because "none of the individual rulings work any cognizable harm, it necessarily follows that the cumulative error doctrine finds no foothold." Basham, 561 F.3d at 330 (quotation omitted).

## D.

Finally, Susi contends that the district court abused its discretion "in imposing a sentence on the defendant that was unfounded, unsupported and unreasonable." (Appellant's Br. 42). Susi argues that, "although no-one ever mentioned loss figures up to $2 mililion [sic], Judge Whitney spoke of a loss of $4.2 million for which Susi was responsible, as an attempt to justify the wildly divergent sentence imposed." (Appellant's Br. 49). Susi contends that this was because he "was confused with other defendants that the Judge had seen while also being lumped among those unrelated defendants for purposes of increasing loss calculations and, ultimately, for the purpose of imposing one of the harshest sentences on one of the least culpable telemarketers." (Appellant's Br. 50).

This Court reviews a sentence for reasonableness, applying an abuse of discretion standard. Gall v. United States, 552 U.S. 38, 51 (2007); see also United States v. Pauley, 511 F.3d

18

468, 473 (4th Cir. 2007). The appellate court first must ensure that the trial court did not commit any procedural error, such as

> failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the [18 U.S.C.] § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range.

Gall, 552 U.S. at 51. If the Court finds the sentence to be procedurally sound, it then considers the substantive reasonableness of the sentence, taking into consideration the totality of the circumstances. Id.

We conclude the district court did make a significant procedural error because Susi's sentence was based, in part, on a material and clearly erroneous factual finding as to the loss attributable to Susi. The district court found that

> [w]e have approximately $4.2 million in claims collected by the U.S. Probation Office and the U.S. Government at that time. Those are actual claims. We don't know that -- we haven't totaled up the exact number, the U.S. Probation Office has not for the Court, but the estimate right now from the Probation Office is 4.2 million.

(J.A. 396). Although the district court recognized that Susi was "working at one call center and [he was] directly responsible for a small portion of that," the district court also noted that "[i]t's hard for [Susi] to have been involved in hundreds of thousands of dollars of fraud without understanding

19

the scope of <u>this fraud</u> involved millions and millions of dollars." (J.A. 396) (emphasis added).

It was clearly erroneous for the district court to find that the scope of the loss attributable to "this fraud" was $4.2 million. The $4.2 million figure represents the losses attributable to all sixteen Costa Rican call centers, but as the Government concedes, "the indictment and proof in this case were limited almost exclusively to Kalchstein's call center." (Appellee's Br. 17). The record simply does not support a loss finding of $4.2 million as to Susi based on all the Costa Rican schemes when Susi can only be properly charged with the acts of the Kalchstein call center.

Therefore, the district court abused its discretion by basing Susi's sentence on the clearly erroneous understanding that the fraud of which Susi was convicted resulted in $4.2 million in losses. This is true notwithstanding the fact that the sentence was within the properly calculated advisory Guidelines range, to which Susi withdrew his objections. Because the sentence was procedurally unreasonable, we do not consider substantive reasonableness and end our analysis here as the case must be remanded for resentencing. See <u>United States v. Wilkinson</u>, 590 F.3d 259, 269 (4th Cir. 2010) ("Only if we conclude that the district court committed no significant procedural error . . . may we move on to the second step of

considering the substantive reasonableness of [the] sentence . . . .").

It also follows that the district court abused its discretion by ordering that Susi pay $4.2 million in restitution.[6] This Court's recent decision in a related case, Llamas, ___ F.3d ___, 2010 WL 963195 (4th Cir. 2010), is instructive:

> In pertinent part, the Mandatory Victims Restitution Act of 1996 (the "MVRA") directs a sentencing court, when sentencing a defendant convicted of an offense involving, inter alia, fraud or deceit, to order "that the defendant make restitution to the victim of the offense." 18 U.S.C. § 3663A(a)(1). Because the MVRA focuses on the offense of conviction rather than on relevant conduct, "the focus of [a sentencing] court in applying the MVRA must be on the losses to the victim caused by the offense." United States v. Newsome, 322 F.3d 328, 341 (4th Cir. 2003) (emphasis added). Thus, in the context of a conspiracy, a restitution award under the MVRA is limited to the losses attributable to the specific conspiracy offenses for which the defendant was convicted. See id.
> At the sentencing hearing, investigators testified that the Kearns Call Center caused approximately $1.7 million in losses between March 2004 and April 2006. Yet, in applying the MVRA, the

---

[6] We note that Susi raised the issue on appeal in terms of "imposing a sentence . . . that was unfounded, unsupported and unreasonable." (Appellant's Br. 42) (emphasis added). Although Susi may have been remiss in not specifically arguing that the restitution order, as well as the order of imprisonment, was in error, we nonetheless consider both on appeal because "restitution is . . . part of the criminal defendant's sentence," United States v. Cohen, 459 F.3d 490, 496 (4th Cir. 2006), as it "is fundamentally 'penal' in nature." United States v. Bruchey, 810 F.2d 456, 461 (4th Cir. 1987).

21

district court ordered Llamas to make restitution of more than $4.2 million, concluding that he was jointly and severally liable for losses caused not only by the Center, but also by other Costa Rican call centers utilizing similar sweepstakes schemes. See J.A. 468 ("All those that were involved in any call center are subject, under the [MVRA], [to] the same joint and several liability."). Because the restitution order was not limited to losses attributable to the Center, the Government has properly recognized — and conceded — the legal error underlying the restitution order.

Llamas, at *7. Like Llamas, Susi was charged with and convicted of participating in a conspiracy involving only one call center, and not of a conspiracy involving all sixteen Costa Rican call centers. Thus the restitution order in this case should also have been "limited to the losses attributable" to the Kalchstein call center conspiracy.[7]

III.

For the foregoing reasons, we hold that the district court did not err in denying Susi's motion for acquittal, committed no cumulative evidentiary error, and no prosecutorial misconduct occurred. Therefore, we affirm Susi's convictions. However, we

---

[7] Although government counsel, who also handled the Llamas case, conceded error as to the restitution order in Llamas, they did not make that concession here. During oral argument the government explained that this distinction was based on its belief that Susi failed to raise the restitution issue on appeal. However, the government did concede that Susi's situation was factually the same as Llamas' as to the restitution order and we concluded Susi did sufficiently raise the restitution issue.

22

vacate Susi's sentence, including the order of restitution, and remand the case for resentencing consistent with this opinion.

<u>AFFIRMED IN PART</u>,
<u>VACATED IN PART</u>,
<u>AND REMANDED</u>