**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 10-5055**
_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

MICHAL ZAKRZEWSKI, a/k/a White Mike,

Defendant - Appellant.

_____

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte. Frank D. Whitney, District Judge. (3:07-cr-00166-FDW-1)

_____

Argued: October 28, 2011                    Decided: February 2, 2012

_____

Before WILKINSON, KING, and DIAZ, Circuit Judges.

_____

Affirmed in part, vacated in part, and remanded by unpublished opinion. Judge Diaz wrote the opinion, in which Judge Wilkinson and Judge King joined.

_____

**ARGUED**: David O. Schles, LAW OFFICE OF DAVID SCHLES, Charleston, West Virginia, for Appellant. Michael Alan Rotker, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF**: Lanny A. Breuer, Assistant Attorney General, Greg D. Andres, Acting Deputy Assistant Attorney General, Ellen R. Meltzer, Patrick M. Donley, Peter B. Loewenberg, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

DIAZ, Circuit Judge:

Michal Zakrzewski pleaded guilty to offenses stemming from his participation in a fraudulent telemarketing conspiracy. On appeal, Zakrzewski challenges his sentence, which includes a restitution order. The government seeks to enforce Zakrzewski's appeal waiver, maintaining that his appeal should be dismissed. Zakrzewski, however, contends that the appeal waiver cannot be enforced because the government breached its agreement with Zakrzewski by improperly using statements he made during his proffer session to resist his request for a downward variance at sentencing.

We decline to resolve whether the government breached its agreement with Zakrzewski and, if so, the impact of such a breach on Zakrzewski's appeal waiver. Because Zakrzewski failed to object to the use of his proffered statements at sentencing or to the amount of the restitution order, we review each issue for plain error. Applying that exacting standard, we find no merit to Zakrzewski's claim for relief based on the proffered statements. As to the restitution order, the amount imposed by the district court exceeds the statutory limit, which provides an independent ground for excusing Zakrzewski's appeal waiver. Reaching the merits of that claim, we find plain error and, accordingly, vacate the restitution order and remand.

I.

A.

In April 2002, Zakrzewski traveled to San Jose, Costa Rica to work in a call center operated by Guisseppe Pileggi. Zakrzewski and Pileggi first met in Canada in 2000, where their telemarketing scheme began in 2001. In 2002, Pileggi relocated to Costa Rica to open one of several fraudulent call centers targeting United States citizens. The call centers all utilized the same basic scheme. An "opener" would call "leads" in the United States, telling their potential victims that they had won second prize in a sweepstakes. To mask the foreign origin of the calls, the call centers employed a technology that made it appear as if the calls originated in Washington, D.C. As part of the scheme, the "opener" falsely indicated that he or she was employed by a federal agency that regulated sweepstakes. The "opener" told the victim that to claim the prize money, the victim must pay a refundable "insurance fee"—typically several thousands of dollars—to "Lloyd's of London of Costa Rica." The "insurance fee" was to be wired via Western Union.[1] If the

---

[1] As a continuing offense under 18 U.S.C. § 3237(a), wire fraud may be prosecuted in "any district where a payment-related wire communication was transmitted in furtherance of [Zakrzewski's] fraud scheme." United States v. Ebersole, 411 F.3d 517, 527 (4th Cir. 2005) (citing United States v. Kim, 246 F.3d 186, 192 (2d Cir. 2001), cited with approval in United States v. Stewart, 256 F.3d 231, 243 (4th Cir. 2001)). The (Continued)

3

victim fell for the scam and wired the initial "insurance fee," a "loader" would call again, this time telling the victim that he or she had actually won first prize in the sweepstakes and needed to wire more money to receive the larger prize. If the victim acquiesced in wiring more money, the victim would continue to be "loaded" and "reloaded." No victim ever received any prize money.

After arriving in Costa Rica in 2002, Zakrzewski first worked as an "opener" in Pileggi's call center, but in 2003 Zakrzewski became a "room boss." In this position, Zakrzewski was tasked with scheduling the calls, providing lists of leads, collecting the results of the calls, and delivering these results to his supervisors. After a falling out with Pileggi, Zakrzewski left Pileggi's employ to join another call center operated by Al Duncan. In early 2005, however, Zakrzewski returned to Pileggi's center. In December 2005, Zakrzewski left the call center and opened a scooter rental business in Puerto Viejo, Costa Rica.

---

Western Union wire transfers were electronically routed and processed through Charlotte, North Carolina (within the Western District of North Carolina), before being sent to their final destinations. See United States v. Llamas, 599 F.3d 381, 385 n.3 (4th Cir. 2010) (noting, in a case involving another call center defendant, that venue was proper in the Western District of North Carolina because the wire transfers were routed through that district).

Zakrzewski's departure was timely because months later, on May 16, 2006, Costa Rican and U.S. authorities raided more than fifteen Costa Rican call centers. The raids resulted in the arrest of many persons involved in the call centers,[2] but Zakrzewski, now living in Puerto Viejo, was not arrested. Ultimately, on April 27, 2007, Zakrzewski was charged in a sealed complaint in the Western District of North Carolina with conspiracy to defraud via a telemarketing scheme, in violation of 18 U.S.C. §§ 371, 1343, and 2326. Zakrzewski was arrested in Costa Rica on June 25, 2007. Subsequently, he was named in a twenty-three count indictment filed on July 25, 2007 in the Western District of North Carolina, charging him in Count 1 with conspiracy to defraud, in violation of 18 U.S.C. §§ 371, 1343, 1341, 2314, and 2326(2)(A)-(B); and in Counts 2-23 with wire fraud, and aiding and abetting the same, in violation of 18 U.S.C. §§ 2, 1343, and 2326(2)(A)-(B).

For reasons not clear from the record, Zakrzewski was detained for a substantial time by Costa Rican authorities

---

[2] The district court that presided over Zakrzewski's case also presided over the proceedings against many of these call center defendants. Because there were multiple Costa Rican call center conspiracies, we refer generally to the "call center defendants." We note, however, for purposes of remand, that it appears that Zakrzewski was part of the Pileggi and Duncan conspiracies.

before he was extradited to the United States, making his initial appearance in the Western District of North Carolina on May 1, 2009. Shortly after his initial appearance, Zakrzewski signed a proffer agreement with the government.[3] The proffer agreement provided that Zakrzewski would meet with the Fraud Section of the Department of Justice "to determine whether [he could] provide reliable cooperation." J.A. 20. Although the agreement generally protected statements Zakrzewski made during his proffer session from use at trial or sentencing, it also provided that Zakrzewski's statements "may" be used to "rebut any evidence offered by or on [his] behalf in connection with the trial and/or sentencing." Id.

---

[3] We have explained that

> A "proffer agreement" is generally understood to be an agreement between a defendant and the government in a criminal case that sets forth the terms under which the defendant will provide information to the government during an interview, commonly referred to as a "proffer session." The proffer agreement defines the obligations of the parties and is intended to protect the defendant against the use of his or her statements, particularly in those situations in which the defendant has revealed incriminating information and the proffer session does not mature into a plea agreement or other form of cooperation agreement.

United States v. Lopez, 219 F.3d 343, 345 n.1 (4th Cir. 2000) (citing Harry I. Subin et al., Federal Criminal Practice § 10.5 (1992)).

During his proffer session, Zakrzewski made several admissions relevant to this appeal, including that (1) he was aware of the May 2006 raids, resulting in the arrest of many call center defendants, (2) he had checked the website for the Western District of North Carolina to determine if he had been charged, and (3) he took $40,000 in proceeds from the call center when he left in December 2005 to open his scooter rental business.

Following his proffer session, Zakrzewski signed a written plea agreement with the government, agreeing to plead guilty to Counts 1 and 8. The plea agreement included an appeal waiver, barring Zakrzewski from appealing his conviction or sentence "within the maximum provided by the statute of conviction except for (1) claims of ineffective assistance of counsel or (2) prosecutorial misconduct." Id. at 45–46. Zakrzewski also agreed to make full restitution for his offense conduct, with the parties further agreeing that $10 million was a suitable restitution figure.

C.

On August 12, 2009, Zakrzewski entered a plea of guilty to Counts 1 and 8. During the plea hearing, the magistrate judge confirmed that Zakrzewski understood the terms of his appeal waiver, and the government noted that by the terms of the plea agreement, Zakrzewski agreed to pay $10 million in restitution.

7

Prior to sentencing, Zakrzewski filed a sentencing memorandum, requesting that the district court vary downward from the Guidelines range to impose a sentence of 70 months' imprisonment. At the sentencing hearing, Zakrzewski reiterated the arguments advanced in his sentencing memorandum, emphasizing in relevant part that he voluntarily withdrew from the conspiracy, and that because he was "late to th[e] prosecution . . . due to circumstances beyond his control," the value of his cooperation was diminished. J.A. 57–58. In support, Zakrzewski noted that although a motion under Federal Rule of Criminal Procedure 35 remained a possibility, despite his cooperation, the government had not filed a motion for substantial assistance under United States Sentencing Guidelines § 5K1.1 because there were no pending prosecutions of call center defendants.

In opposing Zakrzewski's request for a variance, the government first observed that in "withdrawing" from the conspiracy, Zakrzewski took $40,000 from the victims of the call center. Second, the government argued that Zakrzewski was responsible for the fact that he was late to the prosecution, noting that although he was aware of the raids on the call centers, he did not turn himself in, and that Zakrzewski had checked the court's website to see if he had been charged. In so arguing, the government utilized Zakrzewski's statements from his proffer session. Zakrzewski, however, made no objection.

8

In sentencing Zakrzewski, the district court began by noting an advisory Guidelines range of 135 to 168 months. Looking to the sentencing factors in 18 U.S.C. § 3553(a), the court found that a slight downward variance was appropriate to account for the time Zakrzewski spent in Costa Rican custody. Declining to impose a more robust variance, the court first noted that Zakrzewski was part of "a very complex, very sophisticated conspiracy" that targeted vulnerable persons. Id. at 92. Second, the court observed that prior to leaving the conspiracy, Zakrzewski occupied a position of leadership at the call center and that he "didn't truly legally walk away from the scheme, [he] actually left the scheme with $40,000 in criminal proceeds." Id. at 94. Third, the court found that although Zakrzewski did not personally pose a future threat, it believed there was a general need to deter organized foreign criminal conduct targeting U.S. citizens.

After considering the statutory sentencing factors, the district court sentenced Zakrzewski to 126 months' imprisonment, followed by three years of supervised release. The district court also ordered Zakrzewski to pay $4.2 million in restitution, noting that although Zakrzewski agreed to pay $10 million, $4.2 million was the more appropriate figure based on the dollar value of the claims filed in cases involving other call center defendants.

9

Zakrzewski's attorney did not file a notice of appeal, but subsequent to Zakrzewski's successful petition for relief under 28 U.S.C. § 2255, the court entered an amended judgment, enabling Zakrzewski to timely appeal.

II.

On appeal, Zakrzewski challenges his sentence as both procedurally and substantively unreasonable. Specifically, he contends that the district court committed procedural error by considering evidence not properly before the court—his proffered statements, and imposed a substantively unreasonable sentence. Zakrzewski also argues that the restitution order is erroneous because it is not limited to the losses caused by his criminal conduct.

The government counters that Zakrzewski's appeal should be dismissed because the issues raised fall within the scope of the valid appeal waiver contained in his plea agreement. Zakrzewski, however, contends that in using his proffered statements at sentencing, the government breached the terms of the proffer agreement and committed prosecutorial misconduct, thus piercing the veil of his appeal waiver.

We need not decide whether the government's use of Zakrzewski's proffered statements was a breach of the agreement or prosecutorial misconduct. Because Zakrzewski failed to

10

object to the use of his statements at sentencing, we review only for plain error, and find none.

Zakrzewski's challenge to the restitution order presents a separate issue. Our cases provide that a defendant may not waive his right to appeal a sentence in excess of the statutory maximum, an exception also found in the parties' plea agreement. Because the amount of restitution imposed by the district court exceeds the statutory maximum, the appeal waiver does not foreclose our consideration of this issue. Reaching the merits, we find that the district court plainly erred in ordering Zakrzewski to pay $4.2 million in restitution. Accordingly, we vacate the restitution order and remand for further proceedings.

### III.

"The threshold issue we must consider is whether the appeal waiver . . . precludes [Zakrzewski] from presenting these issues on appeal." United States v. Cohen, 459 F.3d 490, 493-94 (4th Cir. 2006) (citation and alterations omitted). We will uphold an appeal waiver if it is valid and if the issue raised on appeal falls within the scope of the waiver. Id. at 494.

Our broad enforcement of appeal waivers, however, is not without exception. First, we will of course recognize exceptions to an appeal waiver agreed to by the parties. In this case, the parties agreed that Zakrzewski retained his right

to appeal a sentence outside the statutory maximum, as well as ineffective assistance of counsel and prosecutorial misconduct claims.[4]  Second, we will allow an appeal to proceed where the government has breached the very agreement on which it seeks to rely in enforcing the appeal waiver.  See United States v. Dawson, 587 F.3d 640, 644 n.4 (4th Cir. 2009) ("A defendant's waiver of appellate rights cannot foreclose an argument that the government breached its obligations under the plea agreement.") (citing Cohen, 459 F.3d at 495); see also United States v. Blick, 408 F.3d 162, 168 & n.5 (4th Cir. 2005).

It is within this framework that we consider, in turn, Zakrzewski's challenge to his sentence and the restitution order.

---

[4] The exceptions in Zakrzewski's appeal waiver are familiar ones.  See, e.g., United States v. Dawson, 587 F.3d 640, 643 (4th Cir. 2009) (noting that the defendant "waived the right 'to contest the . . . sentence' except for claims of 'ineffective assistance of counsel,' or 'prosecutorial misconduct' "); Cohen, 459 F.3d at 493 (noting that the appeal waiver included "all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to 28 U.S.C. § 2255, excepting an appeal or motion based upon grounds of ineffective assistance of counsel or prosecutorial misconduct").

IV.

A.

First, we consider Zakrzewski's claims that the district court committed both procedural and substantive error with respect to his prison sentence. The government contends that these claims should be summarily dismissed based on Zakrzewski's appeal waiver.

To begin with, we have little difficulty in affirming the validity of Zakrzewski's appellate waiver. See United States v. Broughton-Jones, 71 F.3d 1143, 1146 (4th Cir. 1995) (upholding a waiver as valid where it was "the result of a knowing and intelligent decision to forgo the right to appeal") (citation omitted). Zakrzewski pleaded guilty pursuant to a valid Rule 11 colloquy, wherein the magistrate judge specifically questioned Zakrzewski about the appeal waiver. See id. (looking to the specifics of the Rule 11 colloquy in finding the waiver valid, even where "the district court did not question [the defendant] specifically about the waiver provision itself" (citing United States v. Davis, 954 F.2d 182, 186 (4th Cir. 1992)).

And despite Zakrzewski's assertion that the appeal waiver is "so lacking in mutuality and fairness" as to be facially invalid, Reply Br. 18, he concedes that such waivers are routinely enforced. See, e.g., United States v. Poindexter, 492 F.3d 263, 270 (4th Cir. 2007) (noting that "[a]ppeal waivers

13

also play an important role in the plea bargaining process" and are "enforce[d] . . . so long as the waiver is knowing and intelligent and the issue sought to be appealed falls within the scope of the appeal waiver" (citing Blick, 408 F.3d at 168)). Moreover, we note that Zakrzewski received certain benefits from his plea agreement—namely, the government agreed to dismiss twenty-one counts in the indictment and to recommend that Zakrzewski receive the full three-point reduction for acceptance of responsibility at sentencing. Thus, we decline Zakrzewski's invitation to reject the appeal waiver on its face.

We also find that Zakrzewski's complaints regarding his prison sentence fall within the scope of his appeal waiver. The appeal waiver bars Zakrzewski from challenging "any sentence within the maximum provided by the statute," J.A. 45–46, and here there is no suggestion that the district court imposed a sentence of imprisonment outside of the statutory maximum. Thus, absent an exception to our general enforcement of appeal waivers, Zakrzewski's claims regarding his prison sentence are barred.

B.

Zakrzewski maintains that the government's use of his proffered statements at sentencing triggers such an exception. He claims that in using his statements to rebut his request for a downward variance, the government committed prosecutorial

14

misconduct and breached the agreement. Accordingly, he argues that his appeal either falls within an express exception to his appeal waiver or that the government is barred from enforcing an appeal waiver found in an agreement that it breached.[5]

The government responds that there was no breach, as the statements were used to rebut evidence offered by Zakrzewski at sentencing, and thus their use was expressly contemplated by the terms of the proffer. To this, Zakrzewski replies first that no "evidence"—only argument by counsel—was offered at sentencing. He further contends that the argument was not a misrepresentation—only an advocate's characterization of the facts—and thus there was nothing to rebut.

We need not decide whether the government's use of Zakrzewski's proffered statements excuses Zakrzewski's appeal waiver. Waiver or not, Zakrzewski did not object in the district court to the use of the challenged statements, and thus we review their effect on the sentencing proceedings for plain error.

---

[5] The government notes that Zakrzewski is attempting to rely on a breach of the proffer agreement to circumvent the appeal waiver contained in his plea agreement. Whether the government may breach one agreement with a defendant while seeking to enforce another is a question we need not decide based on our conclusion that Zakrzewski cannot meet the rigorous demands of plain error review.

To warrant relief for plain error, Zakrzewski bears the burden of showing "(1) an error, (2) that is plain, (3) that affects [his] substantial rights, and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings." Dawson, 587 F.3d at 645. An appellate court enjoys discretion in determining whether to notice the error. See United States v. Olano, 507 U.S. 725, 732 (1993). As to the third prong of this test, Zakrzewski must satisfy us that the alleged error " 'affected the outcome of the district court proceedings[,]' " which, in the sentencing context, requires a showing of a " 'reasonable probability, based on the appellate record as a whole, that but for the error he would have received a more favorable sentence.' " Dawson, 587 F.3d at 645 (quoting Puckett v. United States, 129 S.Ct. 1423, 1429 (2009); United States v. Lovelace, 565 F.3d 1080, 1088 (8th Cir. 2009)).

Zakrzewski cannot meet his burden here. He complains that the government erred in using his proffered statements that he took $40,000 when he left the call center, knew of the raids on the call center, and had monitored the court's website to see if he had been charged. The district court, however, referred to only one of these statements before announcing its sentence, noting that Zakrzewski "withdrew" from the conspiracy with $40,000 in criminal proceeds in tow. Moreover, this fact was included without objection in the presentence report prepared by

16

the probation office prior to Zakrzewski's sentencing.  In any event, this isolated reference did not play a meaningful role in the district court's lengthy sentencing explanation, wherein it made a persuasive case for its chosen sentence based largely on factors unrelated to the information disclosed in Zakrzewski's proffer.  For example, the court noted that Zakrzewski was part of a complex conspiracy, that he played a leadership role in that conspiracy, and that a significant sentence was warranted to generally deter similar conduct.  After determining that a slight downward variance was appropriate to account for Zakrzewski's extended detention at the hands of the Costa Rican authorities, the district court imposed a sentence of 126 months' imprisonment on each count, to be served concurrently.

On this record, Zakrzewski cannot meet the "rigorous plain error standard" of showing that the government's use of his proffered statements affected his substantial rights.  Dawson, 587 F.3d at 648.  Accordingly, we affirm the district court's prison sentence.[6]

---

[6] While Zakrzewski's claim of procedural error was not raised below, and thus is subject only to plain error review, we note that our decision in United States v. Hargrove, 625 F.3d 170 (4th Cir. 2010) suggests that his claim of substantive unreasonableness is reviewed for abuse of discretion.  See id. at 183 ("Several circuit courts of appeal have held that appellate courts review the substantive reasonableness of a sentence for abuse of discretion regardless of whether the (Continued)

17

V.

Next, we consider Zakrzewski's claim that the district court erred in ordering restitution. Because the restitution order is part of the district court's sentence, the government maintains that this claim, too, must be dismissed based on the appeal waiver. We disagree.

We have recognized that even a defendant who signs an appeal waiver can "not be said to have waived his right to appellate review of a sentence imposed in excess of the maximum penalty provided by statute." United States v. Marin, 961 F.2d 493, 496 (4th Cir. 1992) (emphasis added). And because federal courts lack "the inherent authority to order restitution, but must rely on a statutory source," we have also held that "a restitution order that exceeds the authority of the statutory source 'is no less 'illegal' than a sentence of imprisonment that exceeds the statutory maximum.' " Cohen, 459 F.3d at 498 (quoting Broughton-Jones, 71 F.3d at 1147). Accordingly, if Zakrzewski's restitution order exceeds the statutory maximum, a challenge to it is not barred by his appeal waiver.

The Mandatory Victims Restitution Act of 1996 (the "MVRA") controls here and provides in relevant part that in sentencing a

parties noted an objection below."). Having reviewed the sentencing transcript at length, we find no abuse of discretion.

18

defendant convicted of certain offenses, the court "shall order . . . that the defendant make restitution to the victim of the offense." 18 U.S.C. § 3663A(a)(1). The MVRA's focus on the offense of conviction, as opposed to relevant conduct, requires that the restitution order be limited to the "losses to the victim caused by the offense." United v. Llamas, 599 F.3d 381, 390-91 (4th Cir. 2010) (citation omitted) (concluding that "in the context of a conspiracy, a restitution award under the MVRA is limited to the losses attributable to the specific conspiracy offenses for which the defendant was convicted"). In addition, under 18 U.S.C. § 3663A(a)(3), "[t]he court shall also order, if agreed to by the parties in a plea agreement, restitution to persons other than the victim of the offense."

In cases involving two other call center defendants, we determined the restitution order in question to be illegal under 18 U.S.C. § 3663A(a)(1). See Llamas, 599 F.3d at 390-91 (noting that "[b]ecause the [$4.2 million] restitution order was not limited to losses attributable to the Center . . . [but held the defendant] jointly and severally liable for losses caused . . . by other Costa Rican call centers utilizing similar sweepstakes schemes" the district court committed "legal error," as conceded by the government); United States v. Susi, 378 F. App'x 277, 288 (4th Cir. 2010) (per curiam) ("Like Llamas, Susi was . . . convicted of participating in a conspiracy involving only one

call center, and not of a conspiracy involving all sixteen Costa Rican call centers. Thus the restitution order . . . should also have been 'limited to the losses attributable' to [Susi's] call center conspiracy."). As a result, we vacated the restitution orders in both cases and remanded for resentencing.[7]

This case is admittedly different from Llamas and Susi, because here the parties agreed that Zakrzewski would make "full restitution," that restitution would include Zakrzewski's "total offense conduct, . . . not limited to the count(s) of conviction," and that the amount to be recommended to the court would be $10 million. J.A. 42. In our view, however, these stipulations by the parties do not warrant a different result.

First, in setting Zakrzewski's restitution order, the district court was not operating under the parties' agreement; rather, the court simply imposed the same amount of restitution it had ordered in the related cases based on the government's representation that $4.2 million was the proper figure. We, however, have twice vacated this award in other cases. Thus,

---

[7] The government argues that under United States v. Johnson, 410 F.3d 137 (4th Cir. 2005), Zakrzewski may not benefit from the subsequent change in law regarding the restitution order. In Johnson the defendant sought to obtain the benefit of United States v. Booker, 543 U.S. 220 (2005). Johnson, 410 F.3d at 149. Here, however, unlike Johnson, there was no subsequent change in law that rendered the district court's restitution order illegal; rather, the orders were always illegal under the MVRA. Johnson, then, does not control our analysis.

because the district court did not rely on the plea agreement in setting the restitution order, we too decline to rely on it to save an order that we have twice determined to be illegal.

Second, while Zakrzewski agreed to pay a sum certain, he "did not agree . . . to relieve the government of its burden of proving that [his] restitution obligation included only those losses caused by [his] criminal conduct." United States v. Patty, 992 F.2d 1045, 1051 (10th Cir. 1993) (concluding that "although Defendant could be ordered to pay restitution in an amount up to $25,000,000 [as agreed to in the plea agreement], she could not be ordered to pay restitution in excess of those losses which the government proved were the result of her fraudulent acts" (citing United States v. Herndon, 982 F.2d 1411, 1420 (10th Cir. 1992)). As we have determined in Llamas and Susi, the $4.2 million restitution order is based on the losses attributable to all Costa Rican call centers, but Zakrzewski was not involved with this broader group of call centers. The restitution order, then, is not linked to Zakrzewski's criminal conduct.

The district court had no "inherent authority" to impose restitution, but rather was confined by the terms of the MVRA. Cohen, 459 F.3d at 498. Because the restitution order is not based on Zakrzewski's plea agreement or his criminal conduct, it

21

exceeds the statutory maximum under the MVRA, and accordingly is outside the scope of Zakrzewski's appeal waiver.

Reaching the merits of Zakrzewski's restitution claim, we review for plain error, as no objection was raised in the district court.  For the reasons discussed in Llamas and Susi, the district court committed plain error in setting the amount of the restitution order.  We further conclude that Zakrzewski's substantial rights are affected by the restitution order, and that the erroneous order affects the fairness of the judicial proceedings.  See United States v. Ubakanma, 215 F.3d 421, 429 (4th Cir. 2000).  Exercising our discretion, we vacate the district court's order of restitution and remand for further proceedings.

VI.

For the reasons stated herein, the judgment of the district court is

AFFIRMED IN PART, VACATED IN PART, AND REMANDED.

22